**Gerald HOWARD, Plaintiff,**

**v.**

**REGIONAL TRANSIT AUTHORITY, Regional Transit Authority, Policeman Povented Taylor, Badge # 23, Regional Transit Authority Policeman Gary Koval, Badge # 36, Regional Transit Authority Badge # ?, Cuyahoga County, Ohio, Commissioner Virgil E. Brown, Commissioner Timothy F. Hagan, Lt. Chester Zembala, Commissioner Mary D. Boyle, Gerald T. McFaul, Sheriff, Defendants.**

**No. C86-98.**

United States District Court,
N.D. Ohio, E.D.

Aug. 11, 1987.

Thomas L. Meros, Cleveland, Ohio, for plaintiff.

Russell T. Adrine, Gen. Counsel, Robert E. Davis, Asst. Gen. Counsel, Greater Cleveland Regional Transit Authority, John T. Corrigan, Cuyahoga County Prosecutor, Kevin Purcell, Colleen C. Cooney, Asst. County Prosecutors, Cleveland, Ohio, for defendants.

MEMORANDUM OF OPINION AND OR-
DER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDG-
MENT

KRENZLER, District Judge.

The plaintiff, Gerald Howard, com-
menced the instant action pursuant to 42
U.S.C. § 1983, alleging the deprivation of
his civil rights under color of state law.
He alleges that his arrest due to mistaken
identity and the subsequent search of his
car on December 5, 1985, deprived him of
the rights secured to him by the Fourth
and Fourteenth Amendment to the United
States Constitution. Additionally, the
plaintiff raises state law claims for false
arrest, false imprisonment and defamation.

The plaintiff originally filed suit against
the City of Lakewood and its agents, and
the Greater Cleveland Regional Transit Au-
thority (the "RTA") and its agents. The
City of Lakewood and its agents were sub-
sequently voluntarily dismissed from the
lawsuit. The plaintiff later amended the
complaint to include the names of the RTA
patrolmen who had been identified—Po-
vented Taylor and Gary Koval. The plain-
tiff again amended his complaint to add the
following defendants: Cuyahoga County,
Ohio, the Cuyahoga County Commission-
ers, Sheriff Gerald T. McFaul, and Lieuten-
ant Chester Zembala (the "County defend-
ants").

Pending before the Court in the instant
case are the defendants RTA, Povented
Taylor and Gary Koval's motion for partial
summary judgment and the County defend-
ants' motion to dismiss. Since matters out-
side the pleading have been presented to
the Court, the Court shall treat the County
defendants' motion to dismiss as one for
summary judgment. *See* Fed.R.Civ.P.
12(b). The plaintiff has filed a memoran-
dum in opposition to the defendants' mo-
tions for summary judgment.

The defendants' motions for summary
judgment came on for a hearing on July 16,
1987. At the hearing, the parties engaged
in oral argument, and presented testimony
and evidence concerning the good faith im-
munity issue.

■ Under Rule 56, summary judgment
is rendered for the movant only if the evi-
dence shows that "there is no genuine is-
sue as to any material fact and that the
moving party is entitled to a judgment as a
matter of law." Fed.R.Civ.P. 56(c). In
ruling on a motion for summary judgment,
"the court must construe the evidence in its
most favorable light in favor of the party
opposing the motion and against the mov-
ant." *Bohn Aluminum & Brass Corp. v.
Storm King Corp.*, 303 F.2d 425, 427 (6th
Cir.1962). "The movant's papers are to be
closely scrutinized while those of the oppo-
nent are to be viewed indulgently." *Wat-
kins v. Northern Ohio Pullers Associa-
tion, Inc.*, 630 F.2d 1155, 1158 (6th Cir.
1980). For the reasons provided below, the
Court grants the defendants' motions for
summary judgment.

I.

A review of the pleadings, depositions,
exhibits, and hearing testimony reveals the
following facts. Prior to December 5,
1985, the plaintiff's brother, Jerome Ho-
ward, had been arrested and incarcerated
several times by various police authorities,
including the Mayfield Heights Police De-
partment, the Cuyahoga County Sheriff's
Department and the Cleveland Police De-
partment. During these arrests, Jerome
Howard repeatedly provided the arresting
or custodial authority with false informa-
tion regarding his name, birth date and
social security number. Upon his arrest by
the Mayfield Heights Police Department in
1975, Jerome Howard represented the
plaintiff's name, birth date and social se-
curity number to be his own. *See* Affidavit
of Sergeant Harry Livingston, Exhibit A to
the County defendants' motion.

Pursuant to standard law enforcement
procedure in the State of Ohio, each time
the plaintiff's brother was arrested or in-
carcerated, the various law enforcement
authorities sent the alias data to the Ohio
Bureau of Identification and Investigation
(the "Bureau"). This data was then en-
tered into the State of Ohio's computer
system—the Law Enforcement Automated
Data Systems ("LEADS"). The informa-

tion contained in LEADS is accessible to the arresting authorities in the State of Ohio. The State maintains a record of alias information to prevent an individual from avoiding arrest by simply providing police with false but internally consistent information regarding his correct name, birth date and social security number. Therefore, as a result of the information provided by the Mayfield Heights Police Department in 1975, the plaintiff's name, birth date and social security number were listed as an alias for Jerome Howard. *Id.*

In keeping with standard law enforcement procedures in the State of Ohio, the various law enforcement authorities also provided the Bureau with Jerome Howard's fingerprint code numbers and distinguishing "marks, scars and tatoos" data. The State maintains this information so that individuals may avoid improper arrest under the alias given by a potential arrestee by having their fingerprints and distinguishing marks, scars and tatoos, if any, checked against the data in the computer. In regards to Jerome Howard, as of December 5, 1985, LEADS contained data as to scars on his forehead, left arm and right eye. *Id.*

On or about October 5, 1984, an arrest warrant was issued by the Cuyahoga County Court of Common Pleas in *State of Ohio v. Jerome Howard*, Case No. CR 186632, on a probation violation for trafficking in drugs. The warrant listed several aliases, including one for "Gerald Howard." *See* Exhibit A to motion for partial summary judgment.

The plaintiff, Gerald Howard, is a bus driver for the RTA. On December 5, 1985, the plaintiff was seated inside his automobile at the West 117 Street RTA parking lot waiting to relieve another driver. Two RTA policemen, the defendants Gary Koval and Povented Taylor, observed the plaintiff in his automobile and thought he was acting in a suspicious manner. The officers obtained the license number of the plaintiff's car and radioed it to an RTA dispatcher. *See* Affidavits of Koval and Taylor,

Exhibits B–1 and B–2 to motion for partial summary judgment. A LEADS computer check of the license number indicated an active felony warrant for "Gerald Howard," and provided Gerald Howard's social security number, birth date and address. *See* Exhibits C–1, C–2, C–3 and C–4 to motion for partial summary judgment.[1]

The RTA dispatcher confirmed the information which she had received from LEADS concerning Gerald Howard with another RTA dispatcher, and then contacted the Cuyahoga County Sheriff's Department for further verification. The Sheriff's Department verified that there was an active, outstanding arrest warrant for "Gerald Howard." *See* Affidavit of Rosalyn Henderson, Exhibit E to motion for partial summary judgment.

Upon receiving confirmation concerning the existence of the arrest warrant from the RTA dispatcher, the defendant RTA policemen approached the plaintiff, who by this time had finished a loop on his bus route, and requested identification. The plaintiff admitted to being "Gerald Howard," but refused to produce identification. The defendant RTA policemen consequently arrested the plaintiff. Once in custody, the plaintiff's driver's license was checked and his name, social security number, approximate height and weight were confirmed. *See* Affidavits of Koval and Taylor, Exhibits B–1 and B–2 to motion for partial summary judgment.

The RTA police transported the plaintiff to the Cuyahoga County Sheriff's Department. Once at the Sheriff's Department, the plaintiff was fingerprinted to determine if he was the "Gerald Howard" listed on the warrant. When the plaintiff's fingerprints did not match the fingerprints of the suspect for which the warrant was issued (his brother, Jerome Howard), the plaintiff was released from custody. *See* Affidavit of Correction Officer Ronald Cimko, Exhibit B to County defendants' motion. The plaintiff's entire detention at the Sheriff's Department lasted less than one hour. *Id.* Because a similar occurrence had taken

---

1. In response to interrogatories and in his deposition, the plaintiff confirmed this data as accurate regarding himself. *See* Exhibits D–1 and D–2 to motion for partial summary judgment.

place involving the plaintiff and the Lakewood police in June 1985, the Sheriff's Department withdrew its warrant entry for "Gerald Howard" from the computer. *See* Affidavit of Koval, Exhibit B–1 to motion for partial summary judgment.

## II.

In their motion for partial summary judgment, the defendants RTA, Koval and Taylor argue that they are entitled to partial summary judgment on the plaintiff's action for false imprisonment under § 1983 because the arrest was executed pursuant to a warrant. Even if an action for false imprisonment is appropriate, the defendants Koval and Taylor contend that they are entitled to the objective good faith defense of qualified immunity from the plaintiff's § 1983 claim. Finally, the RTA argues that it is not liable since the incident in question was not a result of its policy or custom.

In their dispositive motion, the County defendants also state that they are entitled to judgment as a matter of law on the plaintiff's claims of false imprisonment, arguing that the plaintiff was never placed in their custody and was detained by them, if at all, only for the time reasonably necessary for his identity to be obtained. The County defendants further contend that they should be granted summary judgment on the plaintiff's claim of negligence against them for the following reasons: the defendants were not negligent; mere negligence cannot support an allegation of a violation of § 1983; the plaintiff did not meet the requirements for stating a claim for relief under the standard for governmental liability, as set forth in *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and the plaintiff failed to avail himself of available state postdeprivation remedies.

To recover on a § 1983 cause of action, a plaintiff must prove two elements. First, it must be shown that the plaintiff was deprived of a constitutionally protected right. Second, the plaintiff must show that the deprivation occurred under "color of state law," meaning the action which caused the deprivation was "state action." *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

In the instant case, the plaintiff alleges that he was falsely imprisoned and that his automobile was entered and searched without his permission, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. At the hearing on the defendants' dispositive motions, the plaintiff orally moved to dismiss his § 1983 claim based on the alleged illegal search of his car. The Court granted this motion and dismissed the plaintiff's § 1983 claim based on the alleged illegal search. Thus, the plaintiff's remaining federal claims are based solely on the plaintiff's alleged false imprisonment.

The Fourth Amendment to the United States Constitution provides in relevant part:

> The right of the people to be secure in their persons ... against unreasonable ... seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the ... persons ... to be seized.

"By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause." *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) (holding claim against sheriff resulting from incarceration of wrong person due to mistaken identification not cognizable under § 1983). Thus, the plaintiff's alleged false imprisonment does not become a violation of the Fourth and Fourteenth Amendment for which liability may be imposed under § 1983 unless the arresting officer lacked probable cause. *Id.* at 142–43, 99 S.Ct. at 2693–94.

It is well established that searches and seizures conducted without a warrant are suspect and are presumed to be *per se* constitutionally unreasonable. *See Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Generally, to prevent illegal restraint for trivial cases, a law enforcement officer is required

to obtain a warrant to make an arrest. To secure an arrest warrant, a law enforcement officer must demonstrate by substantial and trustworthy evidence that there is probable cause to believe that a violation of the law has been committed, and that the person to be arrested committed the violation.

■ Exceptions to the warrant requirement have been created where the gravity of the offense justifies an immediate arrest without a warrant, where a crime has been committed in the presence of the officer or person making the arrest, or where exigent circumstances make it impractical for law enforcement officers to delay the arrest until they can obtain a warrant. *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Even if the situation is one in which a warrantless arrest is permissible, the arresting officer must still have probable cause to make the arrest. If a suspect is arrested without a warrant, he or she is entitled to a prompt post-arrest determination of whether there was probable cause for the arrest. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

In the days before radio, law enforcement officers arrested suspects after actually seeing the crime committed before them, or pursuant to written arrest warrants in their possession. After the invention of the radio, police officers contacted their dispatcher, who would review the central files for any outstanding warrants for a suspect and would relay this information back to the officers. The law enforcement officers could then act on the arrest warrant without having an actual copy of the warrant in hand. Information in these central files would be periodically updated by the particular law enforcement agencies.

Today, we are in the age of technology and information. Law enforcement agencies have computerized their files. Consequently, we have moved beyond the simple dispatcher system to a computer system involving hundreds of thousands of law enforcement people obtaining information from all over the state and country. As mentioned above, the State of Ohio has set up a computerized information system (LEADS), which is accessible to the law enforcement authorities throughout the State.

The complexity of LEADS and similar computer systems has resulted in several new problem areas in the law concerning arrests and warrants. For instance, can any law enforcement officer act on the information he or she receives from the computer as long as he or she is reasonable and acts with due diligence? Furthermore, does every mistake made as a result of relying on the information from the computer rise to the level of a constitutional violation?

■ This Court concludes that if a law enforcement officer acts reasonably and consistent with the information obtained from the computer system, then a person who is mistakenly arrested because of such information cannot maintain a cause of action under § 1983. *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). If any of the information obtained from the computer concerning the description of a person listed in a warrant conflicts with the actual appearance of a suspect, then the law enforcement officer must weigh the quantity and quality of the characteristics in agreement before making an arrest. (Such characteristics include height, weight, hair color, complexion, age and social security number).

■ This Court further concludes that because of the size and complexity of the computer systems in use by law enforcement agencies, every mistaken arrest cannot rise to the level of a constitutional violation under § 1983. *See id.* To maintain a cause of action under § 1983 for false arrest or imprisonment due to mistaken identity, the plaintiff must demonstrate either that the arrest warrant was invalid, or that the law enforcement officers acted unreasonably and failed to properly consider the information regarding the outstanding warrant, which they obtained from the computer system.

■ Upon review of the facts in the instant case, this Court concludes that the

defendant RTA patrolmen, Gary Koval and Povented Taylor, had probable cause to arrest Gerald Howard on December 5, 1985. The defendants were patrolling the West 117 Street RTA parking lot, when they saw a person in one of the automobiles in the lot acting suspiciously. After obtaining the license number of the car, the RTA policemen called in the license number so that the dispatcher could run a check for any outstanding warrants. This Court finds that, under the facts in this case, it was reasonable for the police officers to call in the license number to obtain more information about the suspect.

Subsequently, the dispatcher informed the two patrolmen that there was an active felony warrant for "Gerald Howard"—the owner of the vehicle. They also were provided with the social security number, birth date and address of "Gerald Howard." After receiving confirmation from the dispatcher that this information was accurate, the defendant RTA policemen approached the plaintiff and requested identification. They arrested the plaintiff only after he admitted to being "Gerald Howard" and refused to produce identification. Upon placing the plaintiff in their custody, the defendant RTA policemen examined the plaintiff's driver's license to ensure that the information they had received from the dispatcher matched the physical appearance of the plaintiff and the information on his license. The defendants then transported the plaintiff to the Cuyahoga County Sheriff's Department.

This Court finds that the defendant RTA patrolmen acted reasonably and consistent with the information that had been supplied to them by the RTA dispatcher. Upon examination of the physical appearance of the plaintiff and upon examination of his driver's license, the defendants concluded that they had the "Gerald Howard" wanted in the arrest warrant. While the plaintiff contended at the hearing that the defendant officers ignored certain information concerning distinguishing scars of Jerome Howard that would have proven the mistaken identity, the Court notes that the defendant officers testified that they never received such information. Accordingly, this Court concludes that the defendants Koval and Taylor acted reasonably under the circumstances and had probable cause to arrest Gerald Howard on the date in question.

Additionally, this Court holds that even if the defendants Koval and Taylor did not have probable cause to arrest Gerald Howard, they are entitled to summary judgment on qualified immunity grounds. Whether a police officer is protected by qualified immunity for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982), assessed in light of the legal rules that were "clearly established" at the time it was taken, *id.* at 818, 102 S.Ct. at 2738. *See also Anderson v. Creighton*, — U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Harlow*); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, ——, 89 L.Ed.2d 271 (1986) (stating qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The defendant RTA patrolmen are protected by qualified immunity in the instant case because a reasonable officer under these circumstances could have believed the arrest of Gerald Howard to be lawful under the clearly established rules governing arrests pursuant to a warrant. *See Anderson*, — U.S. at ——, 107 S.Ct. at 3038–40.

Having held that the actions of the defendant RTA police officers did not violate the constitutional rights of the plaintiff, this Court further holds that the defendant RTA is entitled to summary judgment on the plaintiff's § 1983 claims. In this age of computers and immediate access to information, a governmental body has a duty to provide all the information it has to law enforcement officers to enable them to carry out their functions lawfully. Similarly, law enforcement officers have a duty to use all the information provided to them and to examine the total circumstances of a situation to ensure they are carrying out their functions lawfully.

Upon review of the facts in this case, this Court concludes, as a matter of law, that the RTA fulfilled its duty of providing the information necessary to the defendant police officers to enable them to make a lawful arrest. Upon receipt of the license number from the defendants Koval and Taylor, the RTA dispatcher ran this number through the LEADS computer. The LEADS computer check indicated an active felony warrant for a "Gerald Howard." This information was confirmed by another RTA dispatcher and verified by the Cuyahoga County Sheriff's Department. The RTA officers were not instructed to approach the plaintiff until these attempts to ensure the correctness of the information were made. Accordingly, this Court finds that the plaintiff is unable to maintain his § 1983 suit against the RTA: the actions of the RTA indicate that its custom and policy was to ensure that its law enforcement officers were provided all relevant information necessary to make a lawful arrest. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Finally, this Court concludes that the County defendants are entitled to summary judgment on the plaintiff's § 1983 claim against them. A review of the pleadings, the evidence submitted and the hearing testimony reveals that the alleged negligent acts of the County defendants do not rise to the level of a constitutional violation actionable under § 1983. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

Governmental bodies administering computer systems for law enforcement agencies have a duty to ensure that the information in the computer system is current and complete. Obsolete or incomplete information will have an adverse impact on the ability of law enforcement agencies to perform their functions properly. Similarly, law enforcement people disseminating and using such information have a duty to act in a manner consistent with all the information provided.

The County helps administer the LEADS system for the State of Ohio.

Upon issuance of the arrest warrant for "Jerome Howard" for a probation violation, the County entered numerous pieces of information regarding Jerome Howard into the LEADS system—including his physical description, various aliases, fingerprint code numbers, and identifying scars, marks and tatoos. Thus, when the RTA dispatcher ran the LEADS computer check on the license number and came across an active felony arrest warrant for "Gerald Howard" (an alias of Jerome Howard), she received not only the information on the face of the warrant, but all the details supplied by the County concerning the suspect. Since the information that came to the RTA officers from the LEADS system should have been sufficient for them to arrest the correct person, the County defendants cannot be held liable pursuant to § 1983.

Furthermore, after the defendant RTA patrolmen transported the plaintiff to the Cuyahoga County Sheriff's Department, the plaintiff was fingerprinted to determine if he was the "Gerald Howard" listed on the warrant. When the fingerprints did not match those of Jerome Howard—the true suspect—the plaintiff was released from custody. The plaintiff's entire detention took no longer than an hour. This Court concludes that the plaintiff cannot maintain his § 1983 claims against the County defendants, since they properly utilized the fingerprint information to release him from custody and used no more time than was necessary to check the fingerprints.

### III.

For the reasons provided above, this Court grants the defendants RTA, Povented Taylor and Gary Koval's motion for partial summary judgment and the County defendants' motion for summary judgment regarding the plaintiff's § 1983 claims arising out of the alleged false imprisonment. Since the Court previously dismissed the plaintiff's § 1983 claims against the defendants arising out of the alleged illegal search of the plaintiff's automobile pursuant to the plaintiff's oral motion at the hearing, the Court shall enter summary

judgment in favor of all the defendants and against the plaintiff on the plaintiff's remaining federal claims. Since no federal claims remain, the Court further declines to exercise its pendent jurisdiction over the pending state law claims and dismisses them, without prejudice. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The plaintiff shall pay costs.

IT IS SO ORDERED.