# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

---

CHARLES THOMAS JOYNER,    )
    )
    Plaintiff/Appellee    )    Shelby Circuit No. 28647-9 T.D.
    )
**vs.**    )
    )
DEPUTY SHERIFF B. TAYLOR, et al.,  )    Appeal No. 02A01-9508-CV-00188
    )
    Defendants/Appellants.    )

FILED

**September 18, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE ROBERT L. CHILDERS, JUDGE

For the Plaintiff/Appellee:    For the Defendants/Appellants:

Connie Westbrook    Brian L. Kuhn
Thomas E. Vornberger    Memphis, Tennessee
Memphis, Tennessee

**REVERSED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a civil rights case. Appellants, Shelby County and Shelby County Sheriff A.C. Gilless, Jr., appeal a jury verdict finding them liable for violating the civil rights of Appellee Charles Thomas Joyner under 42 U.S.C. § 1983. Because the alleged civil rights violation was caused by simple negligence, and not by a County policy, procedure, custom, or usage, we reverse.

On June 15, 1976, Charles E. Joyner received a citation for a DWI violation and for driving without tail lights. He failed to appear for his scheduled court appearance. Consequently, a bench warrant was issued for his arrest.

Charles T. Joyner, the Appellee in this case, received a speeding ticket on December 17, 1982. He also failed to appear for his court date, scheduled on January 27, 1983, and a bench warrant was issued for his arrest. Charles T. Joyner subsequently appeared in court on February 4, 1983, and pled guilty to the charge of speeding. Consequently, an order was entered recalling the bench warrant for Charles T. Joyner.

In 1981, the Shelby County Sheriff's Department acquired a new computer system, known as S.C.A.T.S. In 1982 or 1983, the criminal justice information in the City of Memphis' computer system was transferred to S.C.A.T.S. This was a huge undertaking, involving thousands of entries. Much of the information was transferred through the computers. Some of it was manually entered into the S.C.A.T.S. database. Somehow, in the course of the transfer of data, information on Charles T. and Charles E. Joyner was intermingled, resulting in Charles T. Joyner being identified as the person wanted on the warrant for Charles E. Joyner's arrest.

On November 14, 1988, Charles T. Joyner (hereinafter "Joyner") went to the Social Security Office in Memphis to obtain a copy of his lost social security card. While he was there, two officers of the Shelby County Sheriff's Department, deputy sheriffs Bobby Taylor ("Taylor") and Gerald Marcum ("Marcum"), consulted their book of outstanding warrants and found Joyner listed. They arrested Joyner on the outstanding bench warrant. They confirmed over the radio that the first and last name, address, and date of birth for the Charles Joyner in their records back at headquarters matched those of the person they had arrested. Apparently, the officers were concerned that Joyner's height might not match the description given them over the radio, because Marcum attempted to verify Joyner's height by comparing it with his. Joyner protested his innocence and told the officers that he was the wrong person, and that he had to report to work.

Because Joyner had protested repeatedly that the officers had the wrong man, they requested

that Joyner go through expedited processing. Joyner used one phone call to call his mother. He did not ask his mother to call his employer because he "didn't think about it then." He was given the chance to make a second phone call and signed a form stating his right to make a long-distance call. However, Joyner made no second call; he testified that he did not read the form. After having spent approximately nine and a half hours in jail, Joyner posted bond that night. The next day, Joyner's case was dismissed at his court appearance. The same day, he also discovered that he had been fired from his job.

Joyner filed suit against officers Taylor and Marcum in their individual and official capacities, against Sheriff Gilless in his official capacity, and against Shelby County Government for allegedly violating his civil rights under 42 U.S.C. §§ 1983 and 1985. He also sued the two deputies for false arrest and false imprisonment. The Section 1985 claim was later dismissed as to all defendants.

At trial, all of the defendants moved for a directed verdict. These motions were denied by the trial court. The jury initially delivered a verdict in favor of the officers and Sheriff Gilless but against Shelby County in the amount of $50,000. The trial court instructed the jury that the verdict was inconsistent because Shelby County could not be found liable if none of the individual defendants were found liable. After redeliberation, the jury returned a verdict for the two officers but against Sheriff Gilless and Shelby County, once again finding damages in the amount of $50,000. Sheriff Gilless and Shelby County (hereinafter "the County Defendants") moved for a new trial or remittitur, which was denied. Joyner moved for an award of attorney's fees, and this was granted. Joyner also moved for the trial court to reconsider the amount of attorney's fees awarded and to provide findings of fact supporting its award. The trial court did not award the amount sought by Joyner, but altered the award and set forth its findings of fact in support of the award.

The County Defendants appeal the trial court's decisions to deny both motions for directed verdict and its refusal to vacate and set aside the jury verdict. They maintain that 42 U.S.C. § 1983 requires that the deprivation of constitutional rights be caused by an established policy, procedure, custom, or usage. They argue that Joyner's arrest was the result of a simple mistake, not a policy,

2

procedure, custom, or usage. Joyner files a counter-appeal, contending that the trial court erred in the amount of its award of attorney's fees.

In considering an appeal from a jury verdict, this Court does not "reweigh the evidence or reevaluate witnesses' credibility." *Witter v. Nesbit*, 878 S.W.2d 116, 121 (Tenn. App. 1993). Rather, this Court must "take the strongest legitimate view of the evidence favoring the prevailing party, discard all contrary evidence, [and] allow all reasonable inferences to uphold the jury's verdict and set aside the jury verdict only when there is no material evidence to support it." *Id.* at 121; *see also* Tenn. R. App. P. 13(d).

Joyner alleges a deprivation of his civil rights under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (Supp. 1997). It is well established that a municipality can only be guilty of a Section 1983 violation when a person's constitutional rights are deprived as the result of a governmental policy, procedure, custom or usage. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978). There must be a direct causal connection between the policy and the alleged violation. *See Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). A municipality cannot be held liable under the common law theory of *respondeat superior*. *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036. Mere negligence is not enough for a Section 1983 violation; either gross negligence or deliberate indifference is required. *Owens v. City of Atlanta*, 780 F.2d 1564, 1566-67 (11th Cir. 1986). Indeed, some cases hold that even gross negligence is not sufficient. *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 351 (6th Cir. 1994) (relying on *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)).

Joyner asserts two alleged policies to support the jury's finding of a Section 1983 violation. First, he alleges that the Sheriff had no procedure in place to check the warrant information in the S.C.A.T.S. system, and that the failure to do so was a "policy" that resulted in Joyner's erroneous arrest. Second, Joyner asserts that the Sheriff's Department had a written policy for investigating an arrestee's claim of mistaken identity. The written policy included an investigation by the Records

and Identification Division ("R&I"), which Joyner maintains would have uncovered the mistake which lead to his arrest. Instead, the officers followed the Sheriff's Department's "unwritten policy" of utilizing expedited processing for prisoners whose identity is in question. Under this procedure, Joyner alleges he may have been processed more quickly, but there was no real investigation of his claims of mistaken identity. Thus, he argues, this "procedure" resulted in the deprivation of his constitutional rights. We will first address the alleged "policy" of having no procedure for checking warrant information.

The County Defendants rely on the United States Supreme Court's decision in *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). In *Baker*, a facially valid arrest warrant was issued for McCollan, who had committed no crime. Previously, McCollan's brother had been arrested. The brother procured a duplicate of McCollan's driver's license and put the brother's photograph on it. Consequently, when the brother was arrested, McCollan's name and identifying details were entered into the computer. When the brother, the real offender, skipped out on bail, McCollan was later picked up on an outstanding bench warrant. McCollan was held in jail for eight days before the mistake was discovered, despite his repeated protestations that he was innocent. He filed an action under 42 U.S.C. § 1983. The Supreme Court concluded that there had been no constitutional deprivation of his due process rights. *Baker*, 443 U.S. at 146, 99 S. Ct. at 2695-96. In its opinion, the Court found the following:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id.* at 145-46, 99 S. Ct. at 2695. The Court also made the following point:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released.

*Id.* at 145, 99 S. Ct. at 2695. The County Defendants argue that, under *Baker*, since the officers in the instant case acted pursuant to a facially valid arrest warrant and took action to determine if they had the right man, the fact that their investigation was flawed does not give rise to a claim under Section 1983.

4

The County Defendants also cited ***Howard v. Regional Transit Authority***, 667 F. Supp. 540 (N.D. Ohio 1987), in which an arrest was based on mistaken information from a computer system much like the S.C.A.T.S. system in the instant case. The Court concluded that the plaintiff's arrest did not amount to a civil rights violation:

> This Court concludes that if a law enforcement officer acts reasonably and consistent with the information obtained from the computer system, then a person who is mistakenly arrested because of such information cannot maintain a cause of action under § 1983.

*Id.* at 546. The County Defendants argue that the officers in this case acted in a reasonable manner, consistent with the information available to them. The name, date of birth, and address all matched. There was apparently some concern that Joyner's height did not match the information from headquarters, but the difference was insufficient to cause reasonable officers to conclude that they were arresting the wrong man.

Joyner cites several cases purportedly establishing that a police department's failure to update and correct information in a computer system is a policy or procedure sufficient to support a Section 1983 violation. ***See United States v. Mackey***, 387 F. Supp. 1121 (D. Nev. 1975); ***People v. Ramirez***, 668 P.2d 761 (Cal. 1983) (in banc); ***Albo v. State***, 477 So. 2d 1071 (Fla. Dist. Ct. App. 1985); ***People v. Lawson***, 456 N.E.2d 170 (Ill. App. Ct. 1983); ***People v. Jones***, 443 N.Y.S.2d 298 (N.Y. Crim. Ct. 1981). However, none of these cases involve civil actions for alleged Section 1983 violations. Rather, they deal with the suppression of evidence collected in a search based on inaccurate information from police computers or records. In these cases, inaccurate information was relayed because of negligence, not deliberate indifference. ***See Mackey***, 387 F. Supp. at 1125; ***Ramirez***, 668 P.2d at 766; and ***Albo***, 477 So. 2d at 1076. As noted above, a Section 1983 violation cannot be based on a finding of mere negligence; either gross negligence or deliberate indifference is required. ***Owens v. City of Atlanta***, 780 F.2d at 1566-67. Joyner cites no case in which a Section 1983 claim is upheld on the basis of inaccurate record keeping.

From the record in this case, it is apparent that the mixup in information on Joyner was the result of a clerical error. Under these circumstances, based on ***Baker*** and ***Howard***, the failure to detect the mixup prior to Joyner's arrest was insufficient to support a jury verdict finding a Section 1983 violation.

Joyner also argues that the Sheriff's Department failed to follow its written policy for investigating an arrestee's claim of mistaken identity. Instead, the officers followed the Department's "unwritten policy" of utilizing expedited processing for Joyner. Joyner asserts that the mistaken identity would have been discovered earlier had the official written policy been followed, which would have entailed an investigation by R&I.

In Section 1983 cases, the plaintiff must produce evidence that the policy at issue caused his injury. *See Strauss*, 760 F.2d at 767 ("A successful [§ 1983] suit requires the plaintiff to establish that he was injured, and that some municipal policy, custom or practice proximately caused the injury."). Even if this were deemed a governmental policy, procedure or custom, Joyner failed to introduce evidence that it caused his injury. There was no evidence that an investigation by R&I in Joyner's case would have uncovered the clerical error and ended in Joyner's being released earlier. Absent evidence of causation, the evidence on this theory was insufficient to support the jury's finding of a Section 1983 violation.

In sum, the Sheriff's Department's failure to detect the mixup in information on Joyner prior to his arrest cannot be deemed a governmental policy, procedure or custom to support a Section 1983 violation. Joyner failed to introduce evidence that the officer's decision to utilize expedited processing instead of referring Joyner's matter to R&I for investigation caused Joyner's injury. Absent evidence of causation, the evidence was insufficient to support a Section 1983 violation. Therefore, the trial court's failure to grant the County Defendants' motion for directed verdict must be reversed. The award of attorney's fees to Joyner must also be reversed. Joyner's issue on appeal, regarding the amount of attorney's fees awarded, is pretermitted by this holding.

The decision of the trial court is reversed. Costs are taxed to the Appellee, for which execution may issue if necessary.

 

 

                                          _____

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____

**W. FRANK CRAWFORD, P. J., W.S.**

_____

**DAVID R. FARMER, J.**

6