**Emma L. OWENS, Individually, Delores Owens and Joseph Owens, As Joint Administratrix and Administrator of the Estate of Robert L. Owens, Deceased, Plaintiffs-Appellants,**

v.

**CITY OF ATLANTA, Gilbert Hammett, John Kirkland, Kirk Butler, L. Birdsong, Daniel Genson, W.M. Cochran, T.M. Steele & C.R. Brownlee, Defendants-Appellees.**

No. 84–8503.

United States Court of Appeals, Eleventh Circuit.

Jan. 30, 1986.

---

James L. Ford, Daniel M. Klein, Atlanta, Ga., for plaintiffs-appellants.

Roy Mays, III, Atlanta, Ga., for defendants-appellees.

Before RONEY and HILL, Circuit Judges, and PITTMAN *, Senior District Judge.

RONEY, Circuit Judge:

There are two principal questions presented on this appeal: (1) whether individual city employees may be held liable under 42 U.S.C.A. § 1983 for merely negligent conduct, and (2) whether liability may be imposed against the City of Atlanta for maintaining a policy regarding use of a "stretch" restraining procedure. This case was orally argued on March 25, 1985, but a decision was delayed pending the *en banc* opinion in *Gilmere v. City of Atlanta,* 774 F.2d 1495 (11th Cir.1985), which has now held that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), does not preclude a section 1983 suit against police officers for physical injuries just because there exists a basis for liability under state tort law. Measuring this case against the established standards for section 1983 liability, we answer both of the above questions in the negative and affirm the district court judgment for the defendants.

Robert Owens died on August 16, 1980 while confined in the detention unit operated by the Atlanta Bureau of Police Services

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

(APD) at Grady Memorial Hospital. His death was by asphyxiation while restrained in the "stretch" hold position.

Mr. Owens had been arrested while intoxicated and became disruptive in a detention cell at the hospital where he was taken for injuries received during his arrest. The defendant police officers secured Owens to a bench 12 inches wide running along the length of the back of the cell. His arms were crossed in front of him and cuffed to holes along the bench. His ankles were placed in leg irons and stretched and attached to holes along the wall. This is called the "stretch" hold position.

Unable to maintain his balance on the wooden bench, Owens fell forward with his face and shoulders on the floor, his arms stretched behind him to the bench. Although released from restraint when it was discovered he was slumped over and had a weak pulse, Owens died. The medical examiner's report concluded that he died as a result of positional or postural asphyxia.

At trial, the parties stipulated that the detention area was under the control and supervision of APD, and that the individual defendants, the police officers who arrested and were involved with Owens prior to his death, were at all times acting under color of state law. Following presentation of plaintiffs' case in chief, the district court directed a verdict in favor of the City of Atlanta. The jury returned a verdict in favor of all of the remaining individual defendants.

## OFFICERS' NEGLIGENCE

█ Plaintiffs challenge the district court's instruction to the jury that the defendants could not be held liable under section 1983 for "mere negligence or delinquency." In the relevant section of the instructions, the court charged the jury:

A police officer may use such force as is necessary to effectuate an arrest or to maintain or restore discipline. In determining whether or not excessive force has been utilized so as to amount to a constitutional violation or deprivation, you must consider the need for the application of force, the relationship between the amount of force used and the need presented, the extent of the injury inflicted, and whether the force was applied in good faith to maintain or restore discipline, or inflicted maliciously and sadistically for the very purpose of causing harm.

I charge you that a police officer may not be held liable under the Civil Rights Act for mere negligence or deliquency.

This charge was entirely correct. The first paragraph of the excerpt quoted above is a reproduction of the test for when unreasonable force will rise to the level of a constitutional violation put forth by the former Fifth Circuit in *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). This Court reaffirmed the *Williams* test in *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500–01 (11th Cir.1985) (*en banc*). *Williams v. Kelley* involved the use of a "choke hold" to subdue a violent and unruly prisoner, who subsequently died from strangulation. The court there found that while defendants' conduct was "arguably negligent," it did not constitute "the sort of abuse of government power" that is cognizable under section 1983. 624 F.2d at 698.

Plaintiffs have cited no cases in our Circuit since *Williams* which have found unconstitutional excessive force when the defendants' conduct was merely negligent. The cases indicate that in order to set forth a due process claim such as that recognized in *Gilmere* as rising to the level of a constitutional tort, the claimant must plead and prove more than mere negligence.

The decision that mere negligence is insufficient to produce a substantive due process violation is supported by the opinions of other circuit courts. In *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir.1985) (*en banc*), the Sixth Circuit recently stated that it knew of "no case" which had found negligent conduct sufficient to state a section 1983 action for a substantive due process violation.

■ The assertion that the defendants violated Mr. Owens' constitutional rights by failing to maintain him free from harm fares no better. Plaintiff must still demonstrate gross negligence or deliberate indifference, mere negligence or delinquency being insufficient to support such a theory. *See, e.g., Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir.1985); *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985).

Plaintiffs' reliance on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), is misplaced. The question in *Parratt* concerned whether the negligence of a state officer can give rise to a *procedural* due process claim *if* the state provides an adequate remedy for the injuries caused through the officer's negligence. Here, the plaintiffs have not shown that the remedies available under Georgia law for negligence are inadequate. This Court has held that not every act or omission by a state officer which would be a violation of state law amounts to a constitutional violation actionable under section 1983. *Dollar v. Haralson County*, 704 F.2d 1540, 1544 (11th Cir.) (quoting *Parratt v. Taylor*, 451 U.S. at 544, 101 S.Ct. at 1917), *cert. denied*, 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983). Robert Owens' death was tragic. The jury found, however, that the conduct of the individual defendants did not exceed simple negligence. This negligence is not sufficient to rise to constitutional dimensions.

## MUNICIPAL LIABILITY

The district court granted a directed verdict for defendant City of Atlanta on the ground that there was no evidence the stretch hold position was unconstitutional.

The standards regarding municipal liability under section 1983 were introduced in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court in *Monell* concluded that municipal liability cannot be imposed under a theory of *respondeat superior*. The municipality must be at fault in some sense for establishing or maintaining the policy which causes the injurious result, although the policy in question may be an informal custom which has not received formal approval but has attained the "force of law." *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 [11th Cir.1985] (interpreting *Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), to impose a fault requirement). Apparently the district court in this case believed that there was no evidence the restraining procedure itself, or as applied to individuals such as Mr. Owens, was unconstitutional, and that in the absence of such evidence the City could not be held liable for the officers' use or misuse of the procedure.

■ The district court was correct in requiring a "fault" element in the municipal liability equation. This requirement is consistent with the Supreme Court's opinion in *Monell*. Were the plaintiff required to prove only the existence of a municipal policy which was a "moving force" behind the officer's actions without having to prove that the City was at fault in adopting or retaining the policy, this would allow the vicarious liability resoundingly rejected in *Monell* and *Tuttle*.

■ During their case, plaintiffs presented evidence regarding the use and nature of the restraining device, and the training of police officers on the use of restraints. Detective Genson, who assisted Sergeant Cochran and Guard Hammett in shackling Owens, testified that he had seen the position used at the Grady Hospital detention area before and had seen the restraint used throughout his 10 to 12 years on the police force. He considered the use of the restraint to be a "matter of routine," but admitted that in his previous testimony he had called the method of restraint "extreme under any circumstances" and stated that less restrictive conditions could have been employed. Hammett knew of the method of restraint employed on Owens as the "stretch" and taught its use to Recruit Butler as a means to make unruly prisoners "uncomfortable," so as to "settle them down." Sergeant Horton, a

medical legal investigator for the Fulton County Medical Examiner's office, testified that the position was also known as the "mosses cross," that he had been familiar with the use of the position since he first joined the police department in 1963, and that he had personally observed it used on about six different people in the course of seven or eight years.

Dr. Zaki, the Fulton County Medical Examiner, testified that no death in Fulton County had been caused in the same or similar manner as that of Mr. Owens during the ten years Dr. Zaki had worked as medical examiner. Dr. Burton, the DeKalb County Medical Examiner, testified that he did not know of any instances in DeKalb or Fulton Counties where a person's death arose from the position in which Owens was restrained. Sergeant Horton testified that he had never heard of anyone dying of positional asphyxiation or suffering serious injury from the use of this manner of restraint.

The district court was correct in concluding that plaintiffs failed to present evidence from which the jury could find the method of restraint constitutionally objectionable. The plaintiffs presented no evidence which would show directly or support an inference that the method of restraint was inherently dangerous or normally likely to create a serious risk of bodily injury or death to the person being restrained.

■ Neither did the evidence permit the jury to find that the City was at fault for continuing to allow its officers to use the restraint. No evidence was presented of any other potential or actual adverse effects resulting from use of the restraint, even to highly intoxicated individuals such as Owens, and the evidence presented showed that the persons testifying were not familiar with any similar situations. There was no evidence of previous instances where police officers misused the restraint in the Grady Memorial Hospital holding cell or otherwise. The City may not be held liable for the officers' failure to employ the restraining device properly, in the absence of evidence that officers had previously misused the device or failed to follow City policy and that the City had failed to correct this misuse. See Fundiller v. City of Cooper City, supra, at 1442–43.

■ Plaintiffs' allegation of insufficient training suffers a similar flaw. In this Court's recent en banc opinion in Gilmere, 774 F.2d at 1504, the Court declined to specify whether a plaintiff will be required to prove gross negligence or some higher standard of liability. Even under the gross negligence or deliberate indifference standard, however, there was no evidence to support such a claim here.

The situation here is easily distinguishable from this Court's recent decision in Anderson v. City of Atlanta, 778 F.2d 678, 680 (11th Cir.1985). Anderson, like Mr. Owens, died while confined in an Atlanta detention cell. Anderson's body was found in his cell several hours after he died. The evidence showed that a custom or practice of lack of adequate staffing was the legal cause of the death and that the City had made a conscious decision not to increase the staff at the Pre-trial Detention Center in the face of repeated complaints of inadequate staffing. From this evidence, the court held that the jury could have found that the City knew or should have known that the natural consequence of the failure to adequately staff would impair proper medical care and attention necessary to protect the health of pretrial detainees. At 686–87. The Court in Anderson found this evidence sufficient to prove the constitutional tort of deliberate indifference to serious medical needs. Id. at 686 n. 12.

The type of evidence in Anderson is not present in this case. Although the court there held that a plaintiff need not demonstrate a prior accident resulting in injury, id. at 686 n. 11, he must present evidence to show that the practice in question is constitutionally deficient, under the proper standards.

The district court did not err in granting a directed verdict for the City of Atlanta on the municipal liability issue.

AFFIRMED.