James R. BROOKS, Plaintiff-Appellee,

v.

D.R. SCHEIB, et al., Defendants,

City of Atlanta, Defendant-Appellant.

No. 86–8106.

United States Court of Appeals,
Eleventh Circuit.

April 6, 1987.

Mary Carole Cooney, Atlanta, Ga., for defendant-appellant.

Arthur L. Myers, Jr., Atlanta, Ga., for plaintiff-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

VANCE, Circuit Judge:

This case involves the City of Atlanta's procedures for investigating citizens' complaints against police officers. James Brooks claimed that these internal investigatory procedures were deficient and that, consequently, the City employed a police officer who improperly arrested and assaulted him. A jury agreed and found the City liable for Brooks' injuries. The City now appeals.

### A. Procedural Background

On October 11, 1983, James Brooks filed this action against D.R. Scheib, a police officer employed by the City of Atlanta. Brooks alleged that, during an altercation which arose when Brooks' van cut off Scheib's car, Officer Scheib arrested Brooks without probable cause and with excessive force. Brooks charged Scheib with deprivation of his constitutional rights in violation of 42 U.S.C. § 1983 and with battery, false arrest, false imprisonment, and the intentional infliction of emotional distress. Brooks further claimed that the City of Atlanta was liable under 42 U.S.C. § 1983 because the City's procedures for handling citizens' complaints of police misconduct caused Brooks' injury. Brooks also brought state law claims against the City, alleging that the City was liable for maintaining a public nuisance and for negligent supervision. Officer Scheib counterclaimed against Brooks, charging assault, battery, defamation, abuse of process, and intentional infliction of emotional distress. Defendants Scheib and City of Atlanta moved for summary judgment. The district court granted this motion for summary judgment only as to the claim of negligent supervision. The remaining allegations were tried to a jury in December 1984. The jury found for defendant Scheib on plaintiff's claims against him, and for Brooks on Scheib's counterclaims. The jury

returned a general verdict for Brooks against the City of Atlanta in the amount of $25,000. The trial judge denied the City's motion for judgment notwithstanding the verdict.

### B. Evidence at Trial

At trial, Brooks' chief witnesses against the City were four Atlanta police officers: the current commissioner and former chief of police, the current head of the office of professional standards, the past head of the office of professional standards, and a field investigator in that office. These police officers outlined in detail the procedures by which complaints against police officers are investigated and processed. The officers set out the various levels of administrative review of citizens' complaints and the different punishments meted out for infractions of departmental rules. Brooks' claim against the City also relied heavily on two pieces of documentary evidence. One was the official rules promulgated by the police department for investigating complaints against police officers. Brooks' other key piece of evidence consisted of ten citizens' complaints that had been filed against Scheib, seven prior to the arrest of Brooks and three following that date.

Brooks argued to the jury that the large number of past citizens' complaints against Scheib, the official police department regulations, and the testimony of the Atlanta officers, all combined to prove that the City's procedures were faulty and that the City knew Scheib had a violent nature. The trial judge instructed the jury as to the elements necessary to prove violations of section 1983 and Georgia nuisance law. The jury returned a general verdict against the City. We thus must examine each cause of action to determine whether either section 1983 or Georgia nuisance law can serve as a proper basis for the jury award.

### C. Section 1983 Claim

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658,

---

\* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Ala-

bama, sitting by designation.

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holds that a municipality shall be liable under 42 U.S.C. § 1983 [1] if a "custom" or "policy" of the city is the "moving force" behind a constitutional violation. *Id.* at 690–94, 98 S.Ct. at 2035–38.[2] Our circuit has interpreted *Monell* as requiring that "[t]he municipality must be at fault in some sense for establishing or maintaining the policy which causes the injurious result ..." *See Owens v. City of Atlanta*, 780 F.2d 1564, 1567 (11th Cir.1986) (citing *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir.1985)).

■ A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a "custom or policy" if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct. *Cannon v. Taylor*, 782 F.2d 947, 951 (11th Cir.1986) (citing *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)). This court's recent *en banc* opinion, *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), declined to specify whether a plaintiff in a section 1983 action must prove gross negligence or some higher degree of fault. *See Owens*, 780 F.2d at 1568.[3] In the present case, however, the City was not at fault under any conceivable standard of liability.

■ Quite simply, there is no evidence that city officials were aware of past police misconduct. *See Cannon v. Taylor*, 782 F.2d at 951; *compare Depew v. City of St.*

*Marys, Georgia*, 787 F.2d 1496 (11th Cir. 1986) (city aware of prior incidents where police had used excessive force, but nevertheless failed to take remedial action). Brooks never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity. In Scheib's case, for example, there is a logical explanation as to why a large number of complaints have been lodged against him: Officer Scheib patrolled a high crime area. A significant percentage of those Scheib arrested were continually in trouble with the law. These experienced "customers" frequently use citizens' complaints as a means of harassing officers who arrest them. The City presented testimony that each complaint was fully investigated and found to be lacking in merit. In sum, there is no evidence that would allow a jury to find that the City knew or should have known that the natural consequence of its policy and practices would be the deprivation of constitutional rights. *See Owens*, 780 F.2d at 1568; *compare Anderson v. City of Atlanta*, 778 F.2d 678, 685–686 (11th Cir.1985) (city knew or should have known that the natural consequence of failure to adequately staff jail would be a tort of constitutional dimensions).

Brooks, nevertheless, points to four specific practices of the City of Atlanta police department and contends that any one of these four is sufficient to support the jury's verdict. The allegedly deficient practices are:

1) The failure to have a written policy requiring that past complaints about an individual officer be brought to the atten-

---

**1.** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

**2.** The plaintiff must show that the complained of action "implements or executes a policy statement, ordinance, regulation, or decision official-

ly adopted and promulgated by that body's officers" or else is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

**3.** The Supreme Court appears deeply divided over this issue. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), *reh'g denied* —— U.S. ——, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985).

tion of investigators and disciplinary officials evaluating a fresh complaint against the officer;

2) The failure to have a written policy requiring that officers be given polygraphs about citizens' complaints;

3) The failure to have a written policy requiring that citizens be given a role in reviewing complaints and disciplining police officers; and

4) The grant of additional arrest powers to certain officers as "point men".

Brooks has not met his burden of proving that the City was at fault. In fact, we can discern nothing objectionable whatsoever in the four practices at issue.[4] Courts traditionally have harbored strong misgivings about allowing allegations of past wrongdoing to bias judges and juries reviewing new charges. *See* 1 Wigmore, *Evidence* §§ 192–94 (1940); McCormick, *Evidence* § 190 (1984); *see also* Fed.R.Evid. 404(b). This hostility towards claims of past wrongdoing is especially intense when strong factual support is lacking. *Compare* Fed.R.Evid. 608(b) *with* Fed.R.Evid. 609. The relevance of past complaints against police officers is especially dubious since officers in high crime areas attract a greater number of citizens' complaints. It would be perverse to require that courts exclude allegations of past wrongdoing in order to protect the rights of defendants, while at the same time demanding that police officials give credence to unsubstantiated complaints against individual police officers. On the other hand, examining the record of complaints against an officer may be helpful in some instances. In fact, there is no city regulation or custom prohibiting review of citizens' complaints. We refuse, however, to mandate a policy which would require that prior complaints always be examined. *See,* e.g., *Wedgeworth v. Harris,* 592 F.Supp. 155 (W.D.Wis.1984).

Similarly, this Circuit has been hostile towards admitting the results of polygraphs into evidence. *United States v.*

*Masri,* 547 F.2d 932, 936 (5th Cir.1977), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *United States v. Beck,* 729 F.2d 1329, 1332 (11th Cir.1984), *cert. denied,* 469 U.S. 981, 105 S.Ct. 383, 83 L.Ed.2d 318 (1984). There is no agreement in the scientific community about the accuracy of polygraph technique, *see, e.g., Conner v. Auger,* 595 F.2d 407, 411 (8th Cir. 1979), *cert. denied,* 444 U.S. 851, 100 S.Ct. 104, 62 L.Ed.2d 67 (1979), and courts have not found polygraphs essential to truth seeking. We see no reason to require polygraphs of officers charged in a citizens' complaint. A written regulation requiring that a police officer take a polygraph whenever a complaint is filed would be wasteful, cumbersome and overly intrusive. Indeed, a polygraph may prove helpful in some instances, and current police department policy allows the administration of polygraphs if the situation warrants. Given the many questions still surrounding polygraphs, we cannot condemn the Atlanta police department for not having a written regulation requiring polygraphs in all cases.

Brooks also complains about the failure to have a citizens' review committee or other outside involvement in the complaint process. Yet, no evidence was presented to show how involving citizens in the process would improve the evaluation of complaints. Brooks has introduced no evidence to indicate that police officers cannot be fair and objective in judging complaints against other officers.

Finally, there is nothing improper in the City granting certain officers greater discretion in making arrests. These officers, while permitted to act with greater flexibility and dispatch than usually permitted under departmental regulations, were instructed to act in accord with all state laws and constitutional rights. Certain areas of the city pose special problems because of the degree of criminal activity. The downtown area patrolled by Officer Scheib was

4. We assume arguendo that the failure to adopt a specific procedure can fall within the *Monell* definition of custom or policy. We, nevertheless, have doubts as to the validity of this proposition. The federal judiciary should avoid limiting the discretion of state and local governments by dictating specific remedial measures.

especially dangerous, requiring the police to modify their normal procedures. Brooks' true objection may be the choice of Officer Scheib for this assignment. Yet this assumes what Brooks is trying to prove, namely, that Scheib should have been weeded out by the City's internal investigatory mechanism.

Brooks fails to establish the causal element—the "affirmative link" between the procedures for investigating citizens' complaints and Scheib's deprivation of Brooks' constitutional rights—necessary to prove a section 1983 claim. *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). Brooks adduces no evidence from which a jury could infer that these allegedly deficient procedures were the *"moving force* of the constitutional violation." *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), (emphasis added). There is no evidence that different procedures for processing citizens' complaints would have resulted in Officer Scheib being disciplined. Brooks was obligated to produce some evidence that the complaints against Scheib had some merit and that more effective citizens' complaint procedures would have prevented his injuries. *See, e.g., Willhauck v. Halpin,* 599 F.Supp. 282 (D.Mass. 1984). Brooks made no such showing.

### D.  Georgia Nuisance Claim

Brooks' nuisance claim must fall to a similar analysis. "To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition which causes the hurt, inconvenience or injury." *Mayor and City of Savannah v. Palmerio,* 242 Ga. 419, 249 S.E.2d 224, 229 (1978); *Southeastern Liquid Fertilizer Co. v. Chapman,* 103 Ga. App. 773, 120 S.E.2d 651, 653 (1961). "[T]he municipality must have knowledge or be chargeable with notice of the dangerous condition." *Mayor and City of Savannah v. Palmerio,* 249 S.E.2d at 229.

Brooks contends that the City maintained a public nuisance by allowing Scheib to remain a police officer despite his propensity towards violence. Yet Brooks' only evidence of Scheib's violent propensity are the past complaints; as discussed above, these unsubstantiated complaints do not establish that Scheib had a violent nature. No witnesses testified that Scheib had exhibited a violent character prior to Brooks' arrest, nor did any witness testify concerning the factual bases of the prior complaints against Scheib. Plaintiff thus failed to establish the "continuous condition"— Scheib's violent tendencies—necessary for a finding of nuisance against the City.

Moreover, even if the City of Atlanta had employed an officer with a violent nature, we have serious doubts as to whether Georgia law permits a city to be held liable for the acts of its police officers. Ga.Code Ann. § 36–33–3 (1982) states:

> A municipal corporation shall not be liable for the torts of a policemen or other officers engaged in the discharge of the duties imposed on them by law.

The Georgia Court of Appeals was equally forthright in *City of Cumming v. Chastain,* 97 Ga.App. 13, 102 S.E.2d 97 (1958), ruling that a claim of maintaining a nuisance could not be used to circumvent the traditional immunity granted municipalities for injuries caused by their police officers.

More recent decisions can be interpreted as undercutting *Chastain. Town of Fort Oglethorpe v. Phillips,* 224 Ga. 834, 165 S.E.2d 141 (1968), and its progeny have significantly expanded the liability of municipalities for maintaining a nuisance. There appears to be a trend towards limiting the municipal immunity doctrine to "negligence in discharging a governmental function." *See Mayor and City of Savannah v. Palmerio,* 242 Ga. 419, 249 S.E.2d 224, 229 (1978). It is unclear whether municipal immunity continues to encompass a nuisance claim against a city for knowingly maintaining a violent police officer. If the plaintiff had presented sufficient facts to properly raise this issue, we would certify the question for resolution by the highest

court of Georgia. *See* Ga.Code Ann. § 15–2–9.

### E. Conclusion

Brooks relied solely on unsubstantiated past complaints against Officer Scheib, without offering any evidence to support the factual allegations made in these complaints. We hold that by so doing the plaintiff failed to show that a City "custom or policy" was "the moving force" of the constitutional injury as required under section 1983 or that Officer Scheib had a violent propensity amounting to a "continuous condition" as required by nuisance law. Accordingly, we reverse and remand for entry of judgment for the defendant City.

REVERSED and REMANDED.