Nora I. BEE, Jr., Plaintiff,

v.

DeKALB COUNTY, A Political Subdivision of the State of Georgia, and Richard K. Morton, both individually and in his capacity as Police Officer of DeKalb County, Defendants.

1:87–CV–356–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 23, 1988.

Waymon Steven Harrell, Hyatt Legal Services, Stone Mountain, Ga., for plaintiff.

Albert Sidney Johnson, Office of DeKalb Co. Atty., Decatur, Ga., Karen Kirkpatrick Karabinos, Johnson & Montgomery, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 alleging defendants deprived him of his constitutional rights. Currently before the court are defendants' motions for summary judgment in their favor. For the reasons given below, the court GRANTS defendant DeKalb County's motion and DENIES the motion of defendant Morton in his individual capacity.

## FACTS

This action arises out of the events surrounding the stop, search and arrest of plaintiff by defendant Morton on August 20, 1986. On that date, at approximately 5:30 a.m., plaintiff was allegedly driving a Honda NC50 motorscooter to his home in DeKalb County. Deposition of Nora I. Bee, Jr., pp. 14–17 ("Plaintiff's Depo."). Plaintiff testified that he was driving approximately 33 miles per hour on a road carrying a maximum speed limit of 35 miles per hour and that, indeed, the motorscooter could not maintain speeds over 35 m.p.h. *Id.*, p. 21. Defendant Morton testified that he clocked plaintiff travelling at a speed of approximately 60 miles per hour in the 35 m.p.h. speed zone. Deposition of Richard K. Morton, p. 3 ("Morton Depo."). Defendant Morton allegedly then turned on his emergency blue lights and siren and followed plaintiff down approximately three different streets, or one to two miles, before plaintiff stopped at his home. *Id.*, pp. 4, 42–44.

When defendant Morton caught up with plaintiff at plaintiff's driveway, he questioned plaintiff regarding the speed of plaintiff's travel and the reasons plaintiff did not stop for his police vehicle. *Id.* Plaintiff stated he did not know defendant Morton was following him and that he did not hear the siren or observe the blue lights before turning into his driveway. *Id.* pp. 4, 45. Plaintiff's Depo., p. 34. Defendant Morton asked to see plaintiff's driver's license and insurance and plaintiff provided him with the former. Plaintiff did not carry insurance on the Honda NC50 motorscooter because allegedly his insurance agent informed him insurance on that vehicle was unnecessary. Plaintiff's Depo., pp. 32–33. Plaintiff did allegedly have proof of insurance on another motorcycle, *Id.* p. 33, although defendant Morton testified that plaintiff was unable to show any type of insurance. Morton Depo., pp. 8, 46.

While defendant Morton was checking plaintiff's license, plaintiff allegedly was attempting to talk with defendant, stating that he hadn't been speeding and hadn't heard Morton's siren or seen the lights on the police car. At that point another police officer drove up and defendant Morton informed plaintiff that he was under arrest for speeding, attempting to elude a police officer and lack of insurance coverage. Plaintiff's Depo., p. 34; Morton Depo., p. 4. Upon hearing he was under arrest and believing he hadn't done anything wrong, plaintiff grabbed the chain-link fence bordering his driveway and called out for his neighbor. Plaintiff's Depo., pp. 35–37. According to plaintiff, defendant Morton did not attempt to take him by the arm when defendant Morton told him he was under arrest. Rather, plaintiff testified that he quickly turned, grabbed tightly on to the fence and stood in a locked position. *Id.*, pp. 40–41.

Defendant Morton testified that both he and the other officer attempted to pull plaintiff away from the fence and that failing at that, defendant Morton successfully began a "finger roll" on plaintiff which entailed taking each of plaintiff's fingers and using force on each to loosen plaintiff's hands from clenching the fence. Morton Depo., p. 5. According to Morton, as he successfully performed the finger roll method on plaintiff, plaintiff attempted to strike him by swinging at him with plaintiff's right elbow. *Id.* Defendant Morton stated in his deposition that when plaintiff "swung" at him, he "moved out of the way from the swing and struck Mr. Bee in the right side of his face. Mr. Bee went down to the ground" at which time the officers handcuffed plaintiff and took him to the police station. *Id.*

Plaintiff disputes that he attempted to swing at defendant Morton. In his deposition, plaintiff stated that he stood without moving, locked to the fence, expecting the officers to pat him down. He further testified that he never tried to pull away from the officers and that defendant Morton never did try to ungrip his hand from the fence. Plaintiff's Depo., pp. 40–42. According to plaintiff, he stood braced to the fence calling for his neighbor when, in only five to seven seconds, defendant Morton wilfully and without provocation hit plaintiff in the face causing him to sustain eye injuries. Plaintiff alleges that defendant Morton maliciously and deliberately arrested him on a false charge and struck him in his right eye thereby depriving him of his Fourth and Fourteenth Amendment rights.

Plaintiff further alleges that DeKalb County deprived him of his constitutional rights by allegedly failing to discipline or dismiss defendant Morton. Plaintiff contends that defendant DeKalb County ("County") knew of defendant Morton's alleged propensity toward violence but failed to take appropriate disciplinary action and in general failed to promulgate adequate rules and regulations for dealing with citizen complaints and allegations of violence and use of excessive force. Both the County and defendant Morton bring motions for summary judgment in their favor. Plaintiff argues that genuine issues of material fact exist to preclude summary judgment. Further facts will be disclosed as necessary for discussion of the motions.

## DISCUSSION

### I. *Liability of DeKalb County* [1]

■ Plaintiff accurately acknowledges that a municipality may not be held liable under 42 U.S.C. § 1983 solely on a theory of *respondeat superior.* Rather, a county may be subject to section 1983 liability only if the action complained of by plaintiff "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Moreover, the county "custom" or "policy" must be the "moving force" behind the constitutional violation alleged by plaintiff to have been committed on him. *Id.* at 690–94, 98 S.Ct. at 2035–37.

■ Interpreting the *Monell* language, the Eleventh Circuit has held that, for a municipality to be liable under 42 U.S.C. § 1983, it "must be at fault in some sense for establishing or maintaining the policy which causes the injurious result...." *Owens v. City of Atlanta,* 780 F.2d 1564, 1567 (11th Cir.1986) (citing *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985). Therefore, while a "policy" or "custom" may be found to exist where a municipality fails to correct unconstitutional behavior of its police officers, section 1983 liability will not lie unless the municipality either tacitly authorizes the behavior or displays deliberate indifference towards the police misconduct. *Brooks v.*

---

**1.** A suit brought against an officer or employee of the county in his *official* capacity is tantamount to a suit against the county itself. *Brandon v. Holt,* 469 U.S. 464, 471–472, 105 S.Ct. 873, 877–878, 83 L.Ed.2d 878 (1985). Thus, insofar as plaintiff has sued defendant Morton in his official capacity, the same defenses apply as set forth by DeKalb County.

*Sheib,* 813 F.2d 1191, 1193 (11th Cir.1987) (citing *Cannon v. Taylor,* 782 F.2d 947, 951 (11th Cir.1986)). In establishing the fault element, plaintiff must prove either gross negligence or some higher degree of fault on the part of the municipality. *Id.*[2]

In the instant action, plaintiff contends DeKalb County may be held liable under § 1983 on two grounds. First, plaintiff alleges that DeKalb County knew of defendant Morton's alleged tendency to use excessive force yet failed to take proper corrective measures. Second, plaintiff alleges that the County's rules and regulations designed to address the issue of police officers' use of force are inadequate. Plaintiff argues that the County should establish an impartial board of inquiry to investigate citizens' allegations of police officers' excessive use of force.

The only evidence plaintiff presented to support his first contention are the depositions of Detective David L. Donehoo, a police officer in the Internal Affairs Division of the DeKalb County Police Department, and Michelle Wilkinson, an acquaintance of plaintiff and ex-girlfriend of defendant Morton. Detective Donehoo testified that prior to plaintiff's lodging a complaint against defendant Morton, only two citizen's complaints alleging unjustified use of force were filed against Morton with the DeKalb County Police Department. Deposition of David L. Donehoo, pp. 15–20 ("Donehoo Depo."). In both instances, the DeKalb County Police Department investigated the complaints pursuant to established County procedures. In one case, the investigation showed that defendant Mor-

ton should have cited or arrested the complainant for disorderly conduct. In the second, the complainant withdrew the complaint. Having found that the complaints lacked merit, the County determined that no disciplinary measures were warranted. *Id.,* pp. 16–24.

In the case of plaintiff's complaint, the Internal Affairs Division took written statements from plaintiff and defendant Morton as well as the second officer present during the incident in question. Because plaintiff's and defendant's versions of the incident differed, both submitted to polygraph tests administered by the Internal Affairs Division. The results of the polygraph tests were inconclusive and, because the Internal Affairs Division had exhausted all its means of investigation, it closed the investigation with a finding of "not sustained." This finding corresponded to a finding that neither the defendant nor the plaintiff could be proved right; the allegation could not be upheld and therefore a finding of "sustained" was not warranted and defendant Morton could not be definitively proved to be without fault and therefore could not be "exonerated."[3]

In addition to pointing to the citizens' complaints, plaintiff refers to a statement made by Michelle Wilkinson in her deposition to support his contention that the County knew of defendant Morton's alleged propensity toward violence. Wilkinson, who at one time dated defendant Morton, testified that Morton told her he was being investigated by the Internal Affairs Division. According to Wilkinson, Morton

---

**2.** The Supreme Court is divided on the question of which standard of fault a plaintiff must prove in order to prevail. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed. 2d 791 (1985), *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985).

**3.** DeKalb County has a policy of investigating all alleged or suspected personnel misconduct. The Internal Affairs Unit investigates all incidents involving the alleged use of force as well as all allegations of civil rights violations. Second Affidavit of F.D. Hand, ¶ 2 ("Second Hand Aff."). All investigations of DeKalb County Police officers must result in one of four findings: unfounded (the acts complained of did not oc-

cur or did not involve public safety personnel); exonerated (acts did occur but were justified lawful and proper); not sustained (insufficient evidence to either prove or disprove the allegations of the complaint); or sustained (sufficient evidence to clearly prove the allegations of the complaint). *Id.* ¶ 4. Based on the findings of the Internal Affairs Division, the officer's superior as well as Hand, the Director of Public Safety, recommend corrective disciplinary action ranging from verbal and/or written counseling, suspension without pay, demotion and termination. *Id.* ¶ 5. Use of excessive force is an expressly prohibited offense and can result in termination. *Id.* ¶ 7.

told her the Internal Affairs Division was investigating a complainant's allegations that Morton hit the complainant after the complainant's vehicle allegedly collided with Morton's car. Deposition of Michelle Wilkinson, pp. 11–13. Wilkinson stated that Morton only told her what the complainant alleged and that he did not tell her he actually struck the complainant. *Id.,* pp. 12–13. Wilkinson also testified that she never witnessed Morton exhibiting violence toward others and she was aware of no other investigations by Internal Affairs.[4]

■ In *Brooks v. Sheib, supra,* the plaintiff alleged, as plaintiff does in the instant action, that the City knew of the defendant police officer's alleged violent nature yet failed to discipline him. The *Brooks* plaintiff argued that past citizens' complaints about the police officer supported a finding that the City knew of the officer's alleged propensity toward violence. The Eleventh Circuit found both that the plaintiff failed to demonstrate that past complaints of the officer's misconduct had any merit and that the City presented testimony that each complaint was fully investigated and found to be lacking in merit. The court concluded, "[i]n sum, there [was] no evidence that would allow a jury to find that the City knew or should have known that the natural consequence of its policy and practice would be the deprivation of constitutional rights." *Brooks, supra,* 813 F.2d at 1193 (citing *Owens, supra,* 780 F.2d at 1568). The Eleventh Circuit held that the plaintiff in *Brooks* was "obligated to produce some evidence that the complaints against [the officer] had some merit ..." and failing to do so, the City could not be held liable. *Id.* at 1195.

The *Brooks* plaintiff also alleged, as does the instant plaintiff, that the City promulgated faulty procedures for dealing with allegations of excessive use of force by police officers. The alleged defects in the rules and regulations promulgated by the City in *Brooks* were similar to those alleged by plaintiff in the present case. The *Brooks* plaintiff argued, among other things, that citizens should be given a role in reviewing complaints and disciplining police officers. The Eleventh Circuit "assume[d] arguendo that the failure to adopt a specific procedure can fall within the *Monell* definition of custom or policy ... [but] nevertheless, [had] doubts as to the validity of this proposition." The court continued, "the federal judiciary should avoid limiting the discretion of state and local governments by dictating specific remedial measures." *Id.* at 1194 n. 4.

As with the *Brooks* plaintiff's first argument that the City knew, through past complaints, of the officer's alleged violent nature, the Eleventh Circuit concluded that the plaintiff was "obligated to produce some evidence that ... more effective citizens' complaint procedures would have prevented his injuries." *Id.* at 1195. The *Brooks* court found that the plaintiff failed "to establish the causal element—the 'affirmative link' between the procedures for investigating citizens' complaints and [the officer's] deprivation of [the plaintiff's] constitutional rights—necessary to prove a section 1983 claim." *Id.*

The *Brooks* decision could have been written in reference to the instant case. Defendant DeKalb County has supported its motion for summary judgment by providing affidavits and deposition testimony showing that past complaints of defendant Morton's alleged misconduct were investigated and found to be without merit. Plaintiff has not shown that past complaints, including the alleged complaint referred to by Ms. Wilkinson, had any merit. In addition, defendant DeKalb County has shown that it follows very specific procedures for investigating allegations or suspicions of police misconduct and plaintiff has

4. To support his allegations of DeKalb County's knowledge and failure to discipline, plaintiff also notes that, when Morton took plaintiff to the station to be booked, defendant Morton told his supervisor that he had hit plaintiff and the supervisor had replied that Morton should receive boxing gloves or a trophy. The court is unable to perceive how such a comment provides evidence that the County knew of defendant Morton's alleged propensity toward violence.

not shown any causation between these procedures and his alleged injuries.

Once a movant supports its motion for summary judgment, as the County has here, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Supreme Court, in *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), noted that the standard for granting summary judgment mirrors the standard for granting a directed verdict. The Court held that, after adequate time for discovery, Rule 56(c) *"mandates* the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.,* 106 S.Ct. at 2552–2553 (emphasis added). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court further clarified that

> at the summary judgment stage the judge's function is ... to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict. [cit] If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted.

*Id.,* 106 S.Ct. at 2511 (citations omitted).

The evidence plaintiff has presented to counter defendants' showing that no County policy or custom was the moving force behind plaintiff's alleged constitutional injuries is at best colorable and not significantly probative. Therefore, the court GRANTS defendant DeKalb County's motion for summary judgment.

## II. *Liability of Defendant Morton*

Plaintiff alleges that defendant Morton violated his Fourth and Fourteenth Amendment rights by allegedly falsely arresting him and using excessive force against him. Defendant Morton, in his individual capacity, moves for summary judgment in his favor on the ground of qualified immunity.

Defendant Morton argues that he acted under a good faith belief based upon reasonable grounds that the measures he took were necessary.

The Supreme Court has created a qualified immunity doctrine which protects government officials from suit. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The qualified immunity doctrine, as enunciated in *Harlow,* was designed to "avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broadreaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (quoting *Harlow,* 457 U.S. at 817–818, 102 S.Ct. at 2737–2738).

The Court has concluded that qualified immunity is actually an entitlement not to stand trial under certain circumstances. *Id.* 472 U.S. at 525, 105 S.Ct. at 2815. Where the allegations of the complaint or the undisputed facts after discovery fail to show that an official violated "clearly established" laws, the official is entitled either to have the complaint dismissed or his motion for summary judgment granted. The Supreme Court recently clarified that

> The right the official is alleged to have violated must have been 'clearly established' in a ... particularized, and hence ... relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, in *Anderson,* a case involving a warrantless search, the Court defined the "relevant question" as "the objective (albeit fact-specific) question of whether a reason-

able officer could have believed [the] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.* 107 S.Ct. at 3040.

Defendant Morton argues that his actions during the incident which is the subject of this suit did not violate clearly established law. He contends that a reasonable officer could have believed that arresting and hitting plaintiff was lawful in light of clearly established Fourth and Fourteenth Amendment law and the information Morton possessed at the time. Although defendant acknowledges that plaintiff's version of the facts differs from defendant's version, defendant argues that plaintiff's "testimony is irrelevant in determining the good faith immunity of defendant Morton." Defendant Morton's Supplemental Brief in Support of Motion for Summary Judgment, p. 10. Defendant submits that the court must ignore plaintiff's testimony and focus on the facts as they reasonably appeared to Morton.

If the language of *Anderson*, *Mitchell* and *Harlow* quoted above is read out of context and in a vacuum, one might arrive at the erroneous conclusion arrived at by defendant. Although the Supreme Court has specified that dismissal or summary judgment is often proper on grounds of qualified immunity, it has not suggested that the rules of procedure which apply to either dismissal or summary judgment should be abrogated. Even where a defendant moves for summary judgment on the ground of qualified immunity, a court may not grant the motion if there exists a genuine issue of material fact. Indeed, in *Mitchell*, the Court stated "even if plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment *if discovery fails to uncover evidence sufficient to create a genuine issue as to whether defendant in fact committed those acts." Mitchell, supra*, 472 U.S. at 526, 105 S.Ct. at 2816.[5]

In the instant action, discovery has uncovered evidence sufficient to create a genuine issue as to whether defendant Morton had probable cause to arrest plaintiff and was justified in striking plaintiff on the right side of his face. Under defendant's version of the events of the morning in question, he did not violate clearly established laws of which a reasonable person should have known. If the facts as asserted by plaintiff are true, however, defendant may not escape liability on grounds of qualified immunity. The credibility of the parties and the truthfulness of each person's version of the incident are questions for determination by the jury.[6] For these reasons, the court DENIES the motion for summary judgment of defendant Morton in his individual capacity.

## CONCLUSION

The court GRANTS defendant DeKalb County's motion for summary judgment and hereby DISMISSES the complaint against the County and defendant Morton in his official capacity. The court DENIES the motion for summary judgment of defendant Morton in his individual capacity.

5. At the conclusion of its opinion, the *Anderson* Court noted that no discovery had yet taken place in the case. Therefore, the Court elaborated that the trial court would first have to determine whether the actions the plaintiff alleged the officer took were actions that a reasonable officer could have believed lawful. "If they [were] not, and if the actions [the officer] claim[ed] he took [were] different from those the [plaintiff] allege[d] (and [were] actions that a reasonable officer could have believed lawful), then discovery may be necessary before" the officer's motion for summary judgment could be resolved. *Anderson, supra* 107 S.Ct. at 3042 n. 6. In the instant action, the court, by grant-

ing plaintiff's motion to amend his complaint, at least impliedly concluded that the allegations of plaintiff's complaint stated a claim of violation of clearly established law. Thus, discovery was necessary to determine whether the actions of plaintiff and defendant on the morning of August 20, 1986 occurred as one or the other asserted in the complaint and answer.

6. As the Supreme Court noted in *Mitchell*, "At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability." 472 U.S. at 527, 105 S.Ct. at 2816.