[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10406
Non-Argument Calendar

_____

D.C. Docket No. 3:14-cv-00579-BJD-PDB

MARVIN L. JOHNSON,

Plaintiff-Appellant,

versus

KEITH A. DIXON, JR.,
DAVID A. STEVENS,
MICHAEL BROWN-MASSALINE,
Individually,
JOHN RUTHERFORD K/N/A MIKE WILLIAMS,
in his official capacity as Sheriff of the City of Jacksonville,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 29, 2016)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Marvin L. Johnson, an inmate with bipolar disorder, was beaten by a corrections officer while two other officers watched. He appeals the district court's grant of summary judgment on his claim that the sheriff should be liable for the actions of the officer based on a failure to properly train those officers. After careful review we conclude that Johnson failed to allege sufficient facts that the sheriff should have known his officers' training was inadequate. We therefore affirm.

## I.

On July 21, 2012, Johnson was in the custody of the Jacksonville Sheriff's Office. He was being held in the Duval County Pre-Trial Detention Facility's ("PDF") dorm for inmates who are mentally ill, due to his bipolar disorder. Officers Keith Dixon, David Stevens, and Michael Brown-Massaline were on duty that evening. Johnson repeatedly asked Officer Dixon for his medication, and was told that the paperwork had not yet arrived. Both Dixon and Johnson used profanity during their conversation. Johnson says Dixon threatened to beat him if he did not shut up. Eventually Johnson realized that Dixon would not help him so Johnson just sat down in his cell.

About thirty minutes later Dixon came to Johnson's cell with Officers Stevens and Brown-Massaline. The officers say they entered Johnson's cell in order to calm him down. Dixon describes Johnson as agitated and yelling

2

expletives at the officers. Johnson says he asked the other officers if they were going to let Dixon beat him. At some point, Officer Dixon did begin to beat Johnson. Johnson details that Dixon, with a metal object in his hand, hit him twenty-five times on his back and five times on his head. Officer Stevens observed "no perceived threat" when Officer Dixon hit Johnson. Stevens and Brown-Massaline stood behind Dixon while he beat Johnson. The officers left Johnson's cell but the district court found that Officer Dixon returned minutes later "with a 'stun gun' and put it on Johnson." Johnson's requests for medical attention were ignored. Johnson was bruised on his back, with a "knot" on his head and blood in his hair.

The officers' supervisor, Lieutenant Toni Broekema, learned of the incident that night and immediately reported it to the Integrity/Special Investigations Unit. That unit issued Dixon a criminal notice for misdemeanor battery. Internal Affairs also investigated the incident and charged all three officers with violating the General Orders for the Sheriff's office. Dixon resigned from his position and was required to relinquish his law enforcement certificate.

Johnson sued the officers in their individual capacities and the Sheriff in his official capacity. A jury found all three officers guilty of committing acts that violated Johnson's right to be free from cruel and unusual punishment. Before the trial, the district court granted summary judgment in favor of the Sheriff, finding

3

that Johnson "failed to establish a fact issue as to the § 1983 municipal liability claim based upon policy or custom." Johnson now appeals this grant of summary judgment to the Sheriff. In his appeal Johnson seeks to proceed against the Sheriff based on his purported failure to adequately train the correctional officers in the proper treatment of mentally ill inmates.

## II.

We review de novo the district court's grant of summary judgment, drawing reasonable inferences and construing the evidence in favor of the nonmoving party. Carter v. City of Melbourne, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam). "Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quotation omitted).

A plaintiff seeking to hold a municipal actor liable under 42 U.S.C. § 1983 must prove that official municipal policy was responsible for the action that caused his injury. Connick v. Thompson, 563 U.S. 51, 60–61, 131 S. Ct. 1350, 1359 (2011). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id. at 61, 131 S. Ct. at 1359. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. "[A]

4

municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (alteration adopted and quotation omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id., 131 S. Ct. at 1360 (alteration adopted and quotation omitted). To establish deliberate indifference for a claim of inadequate training, a plaintiff must show that the municipal "policymakers are on actual or constructive notice that a particular omission in their training causes [municipal] employees to violate citizens' constitutional rights." Id. To show this notice, a plaintiff ordinarily must demonstrate "[a] pattern of similar constitutional violations by untrained employees." Id. at 62, 131 S. Ct. at 1360; accord Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1328 (11th Cir. 2015).

Johnson attempts to meet his burden by pointing out the testimony of all three officers that they had little or no training on how to deal with mentally ill inmates. He also points out that Dixon has been accused of using excessive force in other instances. Johnson argues that the Sheriff was aware of allegations of assaults by officers on inmates before the assault on him in July 2012. In support, he points to a 2014 article about inmates with mental illness at the PDF; the PDF's loss of National Commission on Correctional Health Care accreditation from

5

November 2011 to March 2012; and 101 complaints of excessive force at the PDF from 2009 until the time of his assault.  Seven of those excessive force complaints were sustained (including Johnson's complaint against Dixon).  Johnson also highlights that from 2011 until his assault there were thirty-eight reported responses of force in the PDF mental health dorm, with many reports demonstrating that the use of force was initiated as a first measure after verbal commands were not followed.

This record also establishes, however, that all of the officers completed and passed a forty-hour Crisis Intervention Training course about interacting with inmates with mental health issues.  The training course included visiting the mental health dorms, speaking with mental health patients, and experiencing what it is like to hear voices.  All three officers testified that they had training with regard to people with mental health issues, although not specific to inmates.

This evidence does not establish a genuine dispute about whether the Sheriff was deliberately indifferent to inadequate training of officers on how to deal with inmates who are mentally ill.  Johnson does not allege a pattern of constitutional violations against inmates with mental health issues.  See Connick, 563 U.S. at 62, 131 S. Ct. at 1360.  Instead he cites exonerated complaints against Dixon as well as seven sustained excessive force complaints from a period of over three years at the PDF, and not limited to inmates with mental illness.  He also cites statistics about

6

the use of force at the mental health dorm, but does so without any demonstration that force was wrongly employed.  See Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding the officials were not aware of past misconduct where plaintiff "never demonstrated that past complaints of police misconduct had any merit").

Neither does Johnson explain how the Sheriff should have known these particular officers did not recall their training.  While their lack of memory may reflect upon the quality of the training, deficiencies in the training of particular officers do not put the Sheriff on notice of the need for better training.  See City of Canton v. Harris, 489 U.S. 378, 390–91, 109 S. Ct. 1197, 1206 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  It may be, for example, that an otherwise sound program has occasionally been negligently administered." (citation omitted)); Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009) ("[T]he focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform, and not merely on the training deficiencies for a particular officer." (quotation omitted)).  On this record, lacking other indications of training deficiencies or other incidents involving inmates with mental illness, Johnson has not met his burden.  See Mercado v. City of Orlando,

407 F.3d 1152, 1162 (11th Cir. 2005) ("[A] plaintiff [can]not establish a [municipal liability] claim when he [can]not point to any other incidents involving similar facts.").

Johnson's remaining evidence is even less on point.  The 2014 article reports only about the numbers of inmates with mental illness and not about constitutional violations or the training of correctional officers.  And the accreditation report that listed unmet standards, which were resolved before Johnson's assault, found that "[c]orrectional staff have the required training in health-related topics."  Neither put the Sheriff on notice of inadequate training.  Thus, Johnson has not established a genuine dispute of material fact and summary judgment is appropriate.

**AFFIRMED**