Joseph Alexander MARTIN,
et al., Plaintiffs,

v.

Junior ANDERSON, et al., Defendants.

Civ. A. No. 97–W–1334–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 25, 1999.

Wanda M. Rabren, Andalusia, AL, Samuel Fisher, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

C. Winston Sheehan, Jr., Allison L. Alford, Ball, Ball, Matthews & Novak, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

WALKER, United States Magistrate Judge.

Plaintiffs Joseph Martin and Elenson Smith bring this action against the City of Opp and three of its police officers, Junior Anderson, Scotty Brooks, and Jerome Cobb. Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 against the individual defendants—specifically, both plaintiffs bring claims of excessive force in violation of the Fourth and Eighth Amendments to the United States Constitution and plaintiff Smith brings a claim for false arrest and imprisonment in violation of the Fourth Amendment.[1] Count IV of the complaint asserts a § 1983 claim against the City of Opp arising from these alleged constitutional violations. Count II is a state law assault and battery claim against the individual defendants.

This action is presently before the court on the motion for summary judgment filed by defendants on February 24, 1999. Upon consideration of the motion, the court concludes that it is due to be granted in part and denied in part.

## FACTS[2]

At about 4:00 p.m. on September 30, 1996, plaintiff Smith took plaintiff Martin to Daniel Clark's house to pick up Martin's truck. Smith was drinking from a half-pint of Heaven Hill whiskey. At Clark's house, Smith continued to drink his whiskey, and Martin drank two beers. Plaintiffs left Clark's house at around 6:00 p.m. and went to the County Line Grocery, where Smith purchased a fifth of whiskey. Plaintiffs then went to the home of Joey Clark, where they drank whiskey. At around 9:00 p.m.,[3] Martin drove "uptown," where he and Smith, who was in the passenger seat, encountered Jimmy McCormick at the store. McCormick was driving a pink Mazda low-rider truck. Martin and McCormick spoke briefly, then they both pulled away from the store and drove toward town. McCormick stopped at a traffic light by the Exxon station in Opp. Martin pulled up beside McCormick and revved his engine loudly. Martin then noticed defendant Cobb across the street in a patrol car. (Martin deposition, pp. 123–24, 127–28, 130–31, 133–34; Smith deposition, pp. 80–81; Cobb deposition, pp. 13–14).

When the light changed, Martin and McCormick pulled through the intersection. Martin noticed Cobb turning around behind him, and Martin "gassed it" and "shot in front of" McCormick. (Martin deposition, pp. 134–35). About one block away from the intersection, Martin turned left onto Whaley Street. McCormick did not turn. Cobb followed Martin. Cobb notified the dispatcher that he was pursuing a vehicle. Martin drove through a four-way stop without stopping. Martin then ran another stop sign and turned east

1. Plaintiffs' complaint does not clearly delineate their claims. In interpreting the claims, the court has been aided by the plaintiffs' brief in opposition to the motion for summary judgment and the pretrial order.

2. The court recognizes that the facts in this case are disputed. As it is required to do, however, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992). Since none of the parties have objected to any of the evidence, the court considers any objections to the use or admissibility of the evidence waived for purposes of this motion. *Davis v. Howard,* 561 F.2d 565, 570 (5th Cir.1977). In their "Summary of Disputed Facts," plaintiffs have cited deposition testimony that was not filed by any party. *See, e.g.,* Plaintiff's Brief, p. 5, ¶ 5. The court has not considered any unsupported factual assertions set out in plaintiffs' brief. Additionally, the court has not considered evidence filed with defendants' reply brief. This evidence was filed without leave of court, and plaintiff has not had an opportunity to respond to the additional evidence.

3. *See* Cobb deposition, p. 15.

onto Stuart Street, which is also Highway 84. (Cobb deposition, pp. 15–18).

A slow-moving vehicle pulled onto the road at the Tom Thumb store, and Martin and Cobb had to go around it. Martin slowed his speed to avoid hitting the vehicle. (*Id.* at 19–20; Martin deposition at 147–48). At times, the chase reached speeds of eighty to one hundred miles per hour, according to Martin's and Smith's estimates. (Martin deposition, pp. 147–48; Smith deposition, pp. 91–92). Martin traveled a dirt road, McCloud Road, from Highway 84 to Cool Springs Road and turned toward his house. As he came over the top of a hill, he saw defendant Officer Brooks' car at the bottom. Martin slowed to about 35 miles per hour because he did not know if Brooks would get out of his car or pull in front of Martin. Brooks came to a stop in his own lane. As Martin approached, Brooks remained in his car. (*Id.* at 146–47, 158, 161–62, 165; Cobb deposition, pp. 20; Smith deposition, pp. 94, 102). As Martin accelerated and passed Brooks' car, Brooks reached out through the window of his car and fired four shots. (Martin deposition, pp. 159, 161–63; Smith deposition, p. 105). A shot hit Martin's left rear tire. When Martin slowed to turn onto Booth Boulevard, he lost control of his truck and slid into a ditch. Martin jumped out of the truck and ran to his home, which was three houses away. Smith remained seated in the truck. (Martin deposition, pp. 167–69; Cobb deposition, p. 25; Smith deposition, p. 112).

Cobb approached the truck and told Smith to get out of the truck and to get down. Smith got out of the truck, got down on his knees and put his hands up.

(Smith deposition, pp. 64–66, 116–17). Defendant Officer Anderson, who had joined in the chase at some point, handcuffed Smith. (Cobb deposition, pp. 24, 28; Anderson deposition, p. 46). Smith did not offer any resistance. (Smith deposition, p. 161). As Anderson pulled Smith up by his handcuffs, an officer Smith believed to be defendant Brooks said, "Son of a bitch," and kicked Smith on the left side of his face. (Smith deposition, p. 130). The kick was forceful enough to cause swelling for a period of two weeks. On the morning after the incident, Smith's forehead was swollen to about three inches over his eyes. One of his eyes was bloodshot and sunken, and a bloody fluid dripped from the side of the eye. The imprint of an eyelet of a boot was still visible on his forehead. (Smith deposition, pp. 53–54; Coon deposition pp. 174–81).

Officer Robbie Messick, who was off duty, heard about the chase over his radio. He went to the police station and drove a patrol car to the scene. When he arrived, Smith was sitting down with his hands cuffed behind him. Messick spoke with the officers, then Messick and the other officers [4] left in their cars to drive to the home of Martin's mother, Carolyn Coon. (Messick deposition, pp. 34, 41, 44, 48–52).

Martin, in the meantime, had gone into his home, which is located directly behind his mother's house. He went in, locked the door, and squatted on the floor in the corner of the bedroom. He did not turn on any lights. (Martin deposition, pp. 169–71). When the officers arrived at Coon's house, the officers went to her back door. Coon came to the door and Anderson asked her if Martin were there. Coon said that Martin was not. Coon asked

---

4. Messick testified that he left with Brooks and Anderson. Cobb testified that he remained behind with Smith and the police vehicles. Anderson also testified that Cobb was not present at Coon's house. However, Coon states that Cobb was one of the officers at her house. Martin testified that Brooks,

Anderson and either Cobb or Messick were present at the house, and that Cobb transported him to the police station. (Messick deposition, p. 51; Cobb deposition, pp. 51–52; Anderson deposition, p. 60; Coon deposition, p. 82; Martin deposition, pp. 186, 195).

Anderson if he would like to come in and see. Coon rents a room near the back door to a boarder. The boarder's room was locked, but Brooks broke the lock and looked around the room with a flashlight. Cobb asked Coon about the building behind her house; Coon responded that part of it was a storage building and that the other part was Martin's. Brooks ran to the building and started looking around it, and the other officers followed. (Messick deposition, pp. 56–57, 60; Coon deposition, pp. 83–94). Brooks shone his flashlight into the windows of the building and yelled, "You little son-of-a-bitch, I know you're here. You better come out. I'm gonna beat the hell out of you. You little son-of-a-bitch, you tried to run over me. I'm gonna kill you. You need to go ahead and tell us where you're at, boy. We know you're here you son-of-a-bitch." (Martin deposition, pp. 173–74).

Brooks opened the door to Martin's home and entered. When Martin saw Brooks coming, he dropped to his knees and extended his hands so that Brooks could handcuff him. Instead, Brooks ran toward plaintiff and kicked him on the right side of his chest. Plaintiff bent forward and Brooks kicked him again, this time in his right temple. Brooks grabbed plaintiff by the hair and either hit plaintiff with a flashlight or kicked him on his left cheekbone and temple. (Martin deposition, pp. 174, 176–80). Martin begged Brooks to stop, and called to his mother, asking her to get Brooks to stop. Plaintiff's mother, who had been watching through a window, entered the building and pleaded with the officers to stop, saying, "Please, don't hit him no more. He has seizures; he has a mental problem; he has medical problems ... please, just don't hit him no more. He's not fighting you back. Just leave him alone. Just put the cuffs on him and take him to jail, but don't hurt him no more." (Coon deposition, pp. 97–99). Anderson shoved Coon out of the

building. (*Id.* at 99–102). Brooks pulled plaintiff up, shoved him and pulled him by his hair through the bedroom door, hitting him several times on the head with the flashlight. Brooks dragged plaintiff to the outside door and threw him face-down on the ground. (Martin deposition, pp. 180–82). Anderson or Cobb handcuffed Martin. (Coon deposition, p. 103; Anderson deposition, p. 68).

Someone pulled Martin up by his handcuffs and slapped his head. Brooks cursed at plaintiff, calling him a sorry white piece of trash, son-of-a-bitch, and good for nothing. (Martin deposition, pp. 185–86). Brooks and Anderson repeatedly hit Martin with heavy flashlights. Brooks forcefully kicked Martin several times. (Coon deposition, pp. 109–16). At some point, Brooks told Martin, "You haven't had a beating none like you're going to get when I get you down to the station.... I'm going to fuck you up ... so bad your mama won't never know you." (*Id.* at 120–21). Cobb and Messick pulled Martin to his feet. Then, Brooks grabbed Martin by the hair and dragged him, on his knees, to the front of the house. (*Id.* at pp. 116–17). Brooks and Messick placed Martin in a police car, and all of the officers left in their vehicles. (*Id.* at 116–18).

Coon called her nephew to come and watch her younger son, then she left for the police station. (*Id.* at 118–19). The officers, after they left the house, went back to Martin's truck. They remained there for about ten minutes. During this time, Brooks continued to curse Martin and tell him what Brooks would do to him at the police station. (Martin deposition. p. 191). Cobb transported Martin to the police station, where Coon and Chief Johnny Metcalf were standing outside. (*Id.* at 195; Coon deposition, p. 126). When the police cars arrived at the station, Brooks opened Martin's door, pulled his head back and sprayed mace in his face. Then he pulled Martin up and dragged him around

the car by his hair. Brooks held Martin by the hair and a belt loop and rammed him into a concrete pedestal head-first. Brooks then kicked Martin in the back. (Martin deposition, pp. 195–96). Martin was screaming because of the mace. Brooks told him to raise his head, but Martin was trying to wipe his eyes. Brooks then said, "[r]aise your head before I kick you in the head like a damn football, boy." (*Id.* at 200). Brooks then sprayed Martin in the face with water. (*Id.;* Coon deposition, pp. 132–33). Coon asked Metcalf to intervene, but Metcalf said that the officers were only trying to wash Martin down to get the pepper spray off. Metcalf took Coon inside the police station. (Coon deposition, pp. 128, 135–36). Brooks and another officer took Martin into the station, where Metcalf allowed Martin to wash his face. Martin then saw Smith sitting at a table. Smith's forehead was swollen and bore the imprint of a boot lace and several eyelets, and both of his eyes were bloodshot. Metcalf asked Martin if he wanted to go to the hospital. When Martin responded that he did, Chief Metcalf laughed and asked him why. Martin said it was because of the officers kicking him. Anderson then grabbed Martin's arms, put them behind his back and shoved him into the wall, asking, "Are you insulting the Opp Police Department?" (Martin deposition, pp. 200–02, 204–05; Coon deposition, pp. 138–39). Metcalf again asked Martin if he wanted to go to the hospital. Martin responded that he did. Metcalf then asked Smith if he wanted to go also, and Smith said that he did not. Cobb took Martin to the hospital. (Martin deposition, p. 205). Martin was treated by Dr. Williams for a concussion, tenderness around his liver, bruises and lacerations on his legs, back, chest and head, and bruised kidneys. Martin passed blood in his urine for three or four weeks. (Coon deposition, pp. 66–69).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial ... We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves...."

*Id.* at 324, 106 S.Ct. 2548.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Electrical Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574,

587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Excessive Force

Plaintiffs bring excessive force claims against the individual officers pursuant to the Fourth and Eighth Amendments. However, "the Eighth Amendment applies only after a prisoner is convicted." *United States v. Myers,* 972 F.2d 1566, 1571 (11th Cir.1992) (citing *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In the present case, plaintiffs complain only of excessive force on the night of their arrests. Therefore, plaintiffs' Eighth Amendment claims will be dismissed.

■ "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham, supra,* 490 U.S. at 395, 109 S.Ct. 1865. "[A]pplication [of this standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865.

### Smith

The individual defendants contend that they are entitled to summary judgment on Smith's excessive force claim because: (1) Smith failed to follow the order to get down on the ground; (2) Smith's testimony regarding the kick to his head does not make sense; and (3) even if he were kicked, Brooks' actions were the result of a high speed chase through town and Smith's refusal to obey orders at the scene.

■ The court reminds defendants that this action is before the court on a motion for summary judgment. At this stage of the proceedings, the court cannot ignore the evidence favorable to plaintiffs, as defendants would have it do. Instead, the court is required to accept that evidence as true and to draw all reasonable inferences from the evidence in plaintiffs' favor. Accordingly, for purposes of this motion, the court accepts Smith's testimony that he obeyed orders at the scene and that Brooks kicked Smith in the head after he was handcuffed and when he was offering no resistance. (Smith deposition, pp. 63–66, 116–17, 130, 161). Additionally, Smith was not the driver who led police on the high speed chase through town. Applying the Fourth Amendment objective reasonableness standard to these facts, the court has no difficulty concluding that Smith is entitled to proceed to trial on his excessive force claim against defendant Brooks.

■ Smith does not contend that any of the other officers used excessive force

against him. In a single sentence, he argues, "And [Brooks'] fellow officers condoned this action by not stopping it and covering for him." (Plaintiff's Brief, p. 29). Plaintiff apparently contends that the other individual defendants are liable by virtue of their failure to intervene to stop Brooks' use of excessive force. "[The Eleventh Circuit] has held that 'an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" *Riley v. Newton,* 94 F.3d 632, 635 (11th Cir.1996) (quoting *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985)); *see also Ensley v. Soper,* 142 F.3d 1402, 1407 (11th Cir.1998) (" 'If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.'") (quoting *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986)).

Smith testified that Brooks kicked him just once. (Smith deposition, p. 66). Plaintiff has directed the court to no evidence that Brooks committed any other act of excessive force against him in the presence of Cobb or Anderson, or any other evidence from which a trier of fact could infer that they had any warning that Brooks was going to kick Smith.[5] Thus, the court concludes that Cobb and Anderson had no duty to prevent the kick. *See Riley, supra,* 94 F.3d at 635 ("When he saw Newton struggling with Lowe, Glisson observed no use of excessive force which might have given rise to a duty to intervene to stop it, nor did he have an indication of the prospective use of excessive force—none occurred until Newton's weapon fired. Because Glisson had no reason to expect the use of excessive force

until after it had occurred, he had no reasonable opportunity to protect Lowe, and the obligation to take steps to protect him never arose."); *Id.* (quoting *O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2nd Cir.1988)) (" 'The three blows were struck in such rapid succession that Conners had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.' ").

Accordingly, plaintiff Smith's excessive force claim against Cobb and Anderson will be dismissed.

### Martin

With regard to plaintiff Martin, defendants argue that they are entitled to summary judgment on his claim because he fled and hid from them, was intoxicated, and continued to resist arrest. Defendants argue that "[t]here is no evidence that any of the officers involved in Mr. Martin's arrest engaged in conduct which was unreasonable in effectuating Mr. Martin's arrest." (Defendants' Brief, p. 13). The court disagrees. Viewing the evidence in the light most favorable to Martin, Martin suffered an unjustified beating primarily at the hands of Officer Brooks and, possibly, Officer Anderson.

Again, defendants' argument appears to ignore plaintiffs' evidence. The court will not here reiterate all of the evidence in Martin's favor. However, the court notes that Martin testified that he was on his knees, with his hands outstretched to be handcuffed, when Brooks ran at him and kicked him in the chest and then in his temple. Coon testified that Brooks and Anderson repeatedly hit Martin after he was handcuffed with heavy flashlights.

---

5. The court has not considered whether Brooks' firing on plaintiffs' truck should have put Anderson and Cobb on notice that Brooks would assault Smith because plaintiff has not argued that this is so, and the plaintiff has not directed the court to evidence that Anderson and/or Cobb knew that Brooks had fired at the truck.

Officer Messick testified that when he and Anderson were walking Martin to the car, Brooks kneed Martin three or four times because "[h]e was mad with him." (Messick deposition, p. 100). Messick, Coon and Martin all agree that Brooks grabbed Martin out of the car at the police station by his hair, when Brooks was offering no resistance, and threw him up against a wall. (*See* Messick deposition, pp. 138–39).

This evidence and the other testimony set forth above regarding Martin's treatment creates an issue of material fact regarding whether Brooks' conduct was objectively unreasonable in violation of the Fourth Amendment. While Anderson did not participate in the alleged abuse of Martin to the same extent as did Brooks, the court concludes that the evidence of his repeatedly hitting Martin with a flashlight while Martin was handcuffed creates an issue of fact sufficient to overcome the present motion for summary judgment.

█ Additionally, plaintiff Martin may maintain an action on the basis of the evidence before the court against both Anderson and Cobb for their failure to intervene to stop Brooks' continued use of excessive force.[6] *Riley, supra,* 94 F.3d at 635. Accordingly, the court will deny the individual defendants' motion for summary judgment with regard to plaintiff Martin.

### Assault and Battery

Plaintiffs bring state law assault and battery claims against the individual defendants. Defendants Anderson and Cobb contend that they are entitled to summary judgment because there is no evidence that either of them wrongfully touched either Smith or Martin. Plaintiffs argue that all of the defendant officers are liable for assault and battery because they "assisted and provided allegiance to the actions of Officer Scotty Brooks ... provided back-up to his actions and allowed him to carry through with his conduct and cover-up afterwards." (Plaintiff's Brief, p. 33).

█ Under Alabama law, assault is defined as:

'an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'

*Wright v. Wright,* 654 So.2d 542, 544 (Ala. 1995) (quoting *Allen v. Walker,* 569 So.2d 350, 351 (Ala.1990)). A battery is a successful assault, and consists of touching another in a hostile manner. *Surrency v. Harbison,* 489 So.2d 1097, 1104 (Ala.1986). However, a defendant need not personally touch the plaintiff to be held liable for an assault and battery. Alabama has long recognized a cause of action for conspiracy to commit assault and battery. *See Abney v. Mize,* 155 Ala. 391, 46 So. 230 (1908) (approving trial court's jury instruction that "if Ben Abney aided, abetted, or encouraged Dee Abney in entering into or continuing an unlawful assault on plaintiff, then he would be responsible for whatever Dee Abney did in the furtherance of such assault, notwithstanding that he may not have explicitly encouraged, aided, or abet-

---

6. Plaintiffs may well wish to re-evaluate the evidence with regard to Cobb's participation and consider voluntarily dismissing him from this action. There is significant testimony to the effect that Cobb remained behind with Smith and, therefore, that he was not present when Martin was assaulted. It appears to be possible that Martin and Coon mistook Messick for Cobb. (*Compare* Messick deposition, pp. 138–39 (he transported Martin to station) and Cobb deposition, pp. 38–39 (Messick transported Martin) with Martin deposition, pp. 195–96 (Cobb transported him)). Since both Coon and Martin testified that Cobb was present at the residence, however, the court must accept that he was present, for purposes of this motion.

ted any one particular act of defendant Dee Abney."); *see also* APJI Civil 5.03; *Deal by and through Barber v. Hill,* 619 So.2d 1347, 1349 (Ala.1993) (citing *Abney, supra*).

 In their complaint, plaintiffs alleged that:

At all times during the events described above, the Defendant Police Officers were engaged in a joint venture. The individual Defendant Police Officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.

(Complaint, ¶ 25). The court concludes that plaintiffs have sufficiently alleged a cause of action for conspiracy to commit assault and battery and, therefore, that defendants Anderson and Cobb are not entitled to summary judgment on the basis of their argument that they did not unlawfully touch either plaintiff.[7]

*Discretionary Function Immunity*

The defendant officers further assert that they are entitled to summary judgment by virtue of *Ala.Code* § 6–5–338. This statute extends discretionary function immunity to city police officers. *Couch v. City of Sheffield,* 708 So.2d 144 (Ala.1998). Plaintiffs argue that the defendants were not engaged in discretionary functions at the time of the assault and battery. (Plaintiffs' Brief, p. 33).

 An officer is not protected by discretionary function immunity "if he acts willfully, fraudulently, or in bad faith. Acts of such a nature are not considered to be discretionary within the meaning of [the Alabama Supreme Court's] cases." *Wright v. Wynn,* 682 So.2d 1, 2 (Ala.1996);

*see also Couch, supra,* 708 So.2d at 153 ("[Section 6–5–338] extends discretionary function immunity to municipal police officers, such as Lesley, unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith."). Construing the evidence in the light most favorable to plaintiffs, the court concludes that the actions of defendants Brooks and Anderson with regard to plaintiff Martin, and those of defendant Brooks alone with regard to Smith, are sufficient to permit an inference of wilfulness, maliciousness, or bad faith. *See Wright, supra,* 682 So.2d at 2 ("Because the record indicates that a fact question was presented as to whether Wright used excessive and illegal force in arresting Wynn, we cannot agree that the doctrine of discretionary function immunity precludes Wynn's assault and battery claim.").

 However, the court concludes that evidence that an officer merely stood by while another officer used excessive force against an arrestee—without more—is insufficient to permit an inference of wilfulness, maliciousness or bad faith sufficient to overcome defendants' discretionary function immunity. Plaintiffs have directed the court to no evidence that defendants Anderson and Cobb acted with the requisite state of mind with regard to Brooks' assault and battery of plaintiff Smith. They have not cited evidence permitting an inference of a culpable state of mind on the part of Officer Cobb concerning the assault and battery of Martin by defendants Brooks and Anderson. Accordingly, the court will grant defendant Cobb's motion for summary judgment on the assault and battery claim as to both plaintiffs. The court will grant defendant Anderson's motion with regard to the assault and battery claim of plaintiff Smith

---

7. The court agrees that there is no evidence that Cobb personally committed an assault on either plaintiff. However, as noted above,

Coon testified that defendant Anderson hit Martin in the head with a flashlight three or four times. (Coon deposition, pp. 109–11).

only. Defendant Brooks' motion will be denied as to both plaintiffs.

## False Arrest and Illegal Imprisonment

The defendant officers have moved for summary judgment on plaintiffs' § 1983 claim for false arrest and illegal imprisonment. Plaintiffs responded with argument regarding Smith's claim only. Thereafter, in the pretrial order submitted by plaintiffs and entered by the court, plaintiffs state,

> [T]he plaintiffs in this action, allege four separate causes of action against the defendants: (1) a Section 1983 claim against the individual defendants; (2) a Section 1983 claim against the City of Opp; (3) an assault and battery claim against the individual defendants; and (4) Smith asserts a false arrest and illegal imprisonment claim.

(Pretrial Order, p. 2). Thus, it appears that plaintiff Martin has abandoned his false arrest and imprisonment claim.[8]

■■■ With regard to plaintiff Smith, defendants argue that they are entitled to summary judgment because they had probable cause to arrest him both for public intoxication and for reckless endangerment. "An arrest made with probable cause ... constitutes an absolute bar to a section 1983 action for false arrest." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir.1996). However, "[t]here is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir.1997) (citations omitted). "Probable

cause exists if 'the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'" *Id.* (citation omitted).

### *Public Intoxication*

Under Alabama law, "[a] person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." *Ala.Code* § 13A–11–10(a). Defendants do not argue that Smith annoyed another person by engaging in boisterous or offensive conduct. Instead, they contend that they reasonably believed that Smith was a danger to himself.

In support of their argument, defendants rely on the "fact" that Smith refused to obey the direction of the officers at the scene to get down on the ground. However, as noted above, this fact is in dispute. For purposes of this motion, again, the court must accept Smith's testimony that he followed the order to get down on the ground. It is undisputed that Smith was intoxicated at the time of his arrest. (*See* Smith deposition, pp. 78–80). The parties further agree that Smith was a passenger, not the driver of the truck that fled from Cobb. (Defendants' Brief, p. 18; Plaintiff's Brief, p. 34).[9] Smith remained in the truck until he was ordered by Cobb to step out. (Smith deposition, pp. 64–66, 116–17).

---

**8.** Although it might appear from the language of the pretrial order that Smith's false arrest and illegal imprisonment claim is brought pursuant to state law, the complaint clearly states that Count III is brought pursuant to § 1983. The parties have treated the claim as a § 1983 Fourth Amendment cause of action, and the court will do likewise.

**9.** To support their argument that they had probable cause to arrest Smith, defendants rely largely on evidence obtained during plaintiffs' depositions. (*See* Defendants' Reply Brief, pp. 7–10). However, the question before the court is "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their

■ The offense of public intoxication requires something more than "[m]ere drunkenness." *Congo v. State,* 409 So.2d 475, 477 (Ala.Crim.App.1981) (citing *Thompson v. State,* 253 Ala. 63, 42 So.2d 642 (1949)). Defendants cite *Hardeman v. State,* 651 So.2d 59 (Ala.Crim.App.1994) and *Cagle v. State,* 457 So.2d 463 (Ala.Civ. App.1984) in support of their motion. These cases are readily distinguishable from the present case, however. In *Hardeman,* the arrestee—also a passenger—got out of the car before being asked or directed to do so and did not obey the officer's command to lie flat on his stomach. *Hardeman,* 651 So.2d at 67. The officers in *Cagle* observed the defendant walking along a roadside while he was "so unsteady on his feet that he 'could have stepped out in front of a car and hurt himself.'" *Cagle,* 457 So.2d at 464, 465. For purposes of this motion, the facts are that Smith remained in the car until directed to get out, obeyed the officers' commands and was not walking anywhere when he was arrested.

■ "An officer need not have enough evidence or information to support a conviction to have probable cause to arrest.... 'Only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause.'" *Hardeman, supra,* 651 So.2d at 68 (citations

knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citations omitted). "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers *at the moment of the arrest* would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Id.* (citation omitted) (emphasis added). Thus, what defendants have now learned about Smith's conduct at any time before the chase is irrelevant, absent evidence that the arresting officers were aware of those facts at the time of the arrest. *See also United States v. Meade,* 110 F.3d 190, 193 (1st Cir.1997) ("A

omitted). However, viewing the evidence in the light most favorable to Smith, the court concludes that there is an issue of fact regarding whether the officers had probable cause to arrest him for public intoxication. *See B.S.L. v. State,* 671 So.2d 133 (Ala.Crim.App.1995) ("[A]lthough the officer said that B.S.L. did not walk well, she was sitting in a car until he ordered her out.... The mere assertion by the arresting officer that the appellant was so drunk that she staggered or had difficulty walking does not alone support an inference that the appellant posed a danger to herself. Our conclusion would probably be different if there was clear evidence that the appellant was seen staggering down a highway or was driving a car.").

*Reckless Endangerment*

■ "A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." *Ala.Code* § 13A–6–24. In their reply brief, defendants again rely almost entirely on evidence that was not known to the officers when Smith was arrested. Viewing the facts in the light most favorable to plaintiff, the officers knew—at the time of the arrest—only that Smith appeared intoxicated and that he was the passenger in a truck that led them

warrantless arrest requires probable cause, the existence of which must be determined in light of the information that law enforcement officials possessed at the time of the arrest.") (citation omitted); *Brodnicki v. Omaha,* 75 F.3d 1261, 1264 (8th Cir.1996) ("Probable cause is to be determined upon the objective facts available to the officers at the time of the arrest."); *United States v. Diallo,* 29 F.3d 23 (1st Cir.1994) ("The existence of probable cause must be determined in light of the information known to the police at the time of the arrest.... It is obvious, therefore, that evidence recovered subsequent to an arrest cannot form the basis of probable cause for that arrest.") (citations omitted).

on a high speed chase. These facts, standing alone, are insufficient to permit a reasonable conclusion that Smith had committed the offense of reckless endangerment.[10] Accordingly, defendants are not entitled to summary judgment on Smith's claim of false arrest in violation of the Fourth Amendment.[11]

■ Defendants raise no grounds for summary judgment on plaintiff Smith's illegal imprisonment claim other than that they had probable cause for his arrest. "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega v. Christian,* 85 F.3d 1521, 1526 (11th Cir.1996). The court has determined that there is an issue of fact regarding whether there was probable cause to arrest Smith for public intoxication or reckless endangerment. Therefore, defendants are not entitled to summary judgment on Smith's illegal imprisonment claim.

## City of Opp

The City of Opp argues that it is entitled to summary judgment on plaintiffs' § 1983 claims against it because "[t]here is no illegal policy or custom within the City of Opp which evidences deliberate indifference to the rights of its inhabitants." (Defendants' Brief, p. 25).

Plaintiffs' argument in response to the City's motion for summary judgment is far from clear. However, it appears to the court that plaintiffs argue that the City of Opp's policies and/or customs include: (1) inadequate training of officers, specifically in the areas of supervisory skills and use of force (Plaintiffs' Brief, pp. 36–37); and (2) failing to hold officers accountable for violating the department's written policies (*id.* at pp. 37–39).[12]

The Supreme Court has placed strict limitations on municipal liability under section 1983. . . . [A] municipality may be held liable for the actions of a police officer only when municipal "official policy" causes a constitutional violation. [Plaintiff] must "identify a municipal 'policy' or 'custom' that caused his injury;" "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983."

*Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998) (citations omitted).

### Failure to Adequately Train

■ [T]he City is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [plaintiff's] constitutional rights. Instead, the Supreme Court has explained that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under § 1983. The Supreme Court has instructed that these

---

10. *See Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.").

11. The defendant officers have construed plaintiffs' claims against them as official capacity claims and have not raised a qualified immunity defense. Thus, the court need not address whether the officers had "arguable probable cause" to arrest Smith for either public intoxication or reckless endangerment.

The court advises defendants, however, that it concludes that the claims are individual capacity claims. Otherwise, plaintiffs claims against the City of Opp would be redundant.

12. Plaintiffs have identified additional policies or customs in the pretrial order. Some of these contentions are the subject of a pending motion to strike. On the present motion, the court has considered only those policies/customs identified by plaintiffs in their opposition to the motion for summary judgment.

"limited circumstances" occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.

*Id.* Inadequate police training may result in § 1983 municipal liability " 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.... [The Eleventh Circuit] repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold, supra,* 151 F.3d at 1351 (citations and footnote omitted).

 Plaintiffs point to evidence that Officer Brooks, the senior officer on duty on the night plaintiffs were arrested, was given no supervisory skills training (*see* Metcalf deposition, p. 50), and that Officer Anderson was unaware whether there was a policy regarding shooting into a vehicle for a misdemeanor offense (*see* Anderson deposition, pp. 53–54).[13]

Anderson testified that he did not know whether there was a policy concerning fir-ing at fleeing vehicles, that he had not read a policy about shooting at fleeing misdemeanants, and that he had never been told not to shoot at a fleeing misdemeanant. (Anderson deposition, pp. 53–54). He also testified that he had been trained in the use of deadly force and that he understood that an officer is authorized to use deadly force to protect his life and the lives of others, or to prevent a fleeing felon that might jeopardize the lives of officers or members of the public. (*Id.* at 19).

The evidence relied on by plaintiffs falls far short of that required to establish an issue of fact regarding municipal liability on the basis of a failure to train. First, "[i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton, supra,* 489 U.S. at 390, 109 S.Ct. 1197. The evidence relied on by plaintiffs does not address the adequacy of the training program. Instead, it simply shows that Brooks received no supervisory skills training and that Anderson may have been inadequately trained regarding the use of deadly force. This evidence is insufficient to permit a reasonable inference that the City of Opp's training program for its police officers is inadequate. *See id.* ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").[14]

Additionally, even assuming that these asserted deficiencies render the City's

---

13. Plaintiffs also argue that "[a]ccording to Chief Metcalf, there is no required continuing training programs. The officers can voluntarily do the programs if desired." (Plaintiffs' Brief, p. 36). There is no such testimony set forth in plaintiffs' summary of Metcalf's deposition (*see* Plaintiff's Brief, pp. 19–20), and the court has not located this testimony in the excerpt of Metcalf's deposition filed by plaintiffs in opposition to the motion for summary

judgment. The court has not considered this argument, since it lacks evidentiary support.

14. There may be other evidence of an inadequate program. However, plaintiffs have not filed it and/or have not brought it to the attention of the court. The court does not bear the responsibility of combing the record for evidence in support of plaintiffs' position.

training program inadequate, plaintiffs have directed the court to no evidence tending to show a causal connection between these deficiencies and the alleged constitutional violations. They must do so to prevail on their inadequate training claim. *Id.,* 489 U.S. at 391, 109 S.Ct. 1197 ("[F]or liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury ... Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"). Anderson did not shoot at plaintiffs. Thus, any failure to train Anderson about the policy regarding firing at misdemeanor suspects did not cause the violation of plaintiffs' constitutional rights. With regard to Brooks, plaintiffs have not even attempted to demonstrate how providing him with supervisory skills training would have prevented the alleged constitutional violations. Accordingly, plaintiffs are not entitled to proceed to trial against the City of Opp on the basis of a custom or policy of inadequate training.

*Failure to Discipline*

Plaintiffs appear to argue that they have been injured as a result of the City's custom and policy of failing to impose discipline against its police officers for violations of its written policies as evidenced by: (1) Metcalf's failure to discipline Brooks after observing his conduct outside the police station (Plaintiffs' Brief, p. 37); (2) Metcalf's failure to discipline Brooks "[e]ven after two past lawsuits of excessive force" (Plaintiffs' Brief, p. 38); (3) Metcalf's failure to discipline Brooks after Officer Messick informed Metcalf of the "wrong doing" (Plaintiffs' Brief, p. 38); and (4) Messick's testimony that he had seen Brooks inflict injury on others and that he had "seen some things happen" (Plaintiff's Brief, p. 40).

■ "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir.1987). However, the court concludes that the evidence relied on by plaintiffs is insufficient to create an issue of fact regarding whether the City of Opp "tacitly authorized" or displayed deliberate indifference toward the use of excessive force.

■ Plaintiffs rely on the following testimony from Messick's deposition:

Q. Is abusing prisoners a common practice with the Opp Police Department in your experience?

\* \* \* \* \* \*

A. I don't know if you'd say that. I've seen things happen, you know, but I don't know.

Q. Well, have you seen Mr. Brooks abuse other persons?

A. I've seen Burkley abuse people, yeah.

Q. You've seen him strike handcuffed prisoners before?

A. I don't recall that.

(Messick deposition, p. 146). Plaintiffs have produced no evidence about the nature of the "things" that Messick had observed, and have not shown that Messick conveyed information about these things to any higher authority. The same is true regarding his observation · of "Burkley" abusing people. The court cannot infer from this vague testimony that anyone in a position to discipline Brooks or to discipline other officers was aware of any incident requiring discipline.

In addition to this testimony, plaintiffs rely on evidence that Metcalf did not discipline Brooks after two past lawsuits alleging excessive force. Chief Metcalf testi-

fied that there had been "some lawsuits filed against Mr. Brooks in the past," and that Brooks had not been disciplined as a result of the complaints filed against him. One of the lawsuits, the Waters case, was settled. Chief Metcalf testified that he had the ABI conduct an investigation on the Waters complaint and the ABI found no wrongdoing. (Metcalf deposition, pp. 8, 10, 14). Plaintiffs have not directed the court to any evidence regarding the disposition of any other lawsuit filed against Brooks. In the absence of evidence creating an issue of fact regarding whether the lawsuits had merit, the fact that two lawsuits were filed against Brooks does not demonstrate that the City improperly failed to discipline him. *See Brooks, supra,* 813 F.2d at 1193 ("Quite simply, there is no evidence that city officials were aware of past police misconduct. Brooks never demonstrated that past complaints of police misconduct had any merit.").

 Plaintiffs' remaining evidence pertains to Metcalf's failure to discipline Brooks for the incident at issue in this action, despite his personal observation of Brooks' use of excessive force at the police station and Messick's statement to Metcalf that Brooks had kicked Martin.[15] The court has considered whether a reasonable trier of fact could infer from the fact that Metcalf failed to discipline Brooks for this single incident that the City previously had a custom or policy of not disciplining officers for the use of excessive force.[16] The court concludes that such an inference is not reasonable.

Plaintiffs have failed to direct the court to evidence creating a genuine issue of material fact regarding whether the City of Opp had a policy or custom of inadequately training its police officers or failing to discipline them for their use of excessive force. Accordingly, the City of Opp is entitled to summary judgment on plaintiffs' claims.

## CONCLUSION

As noted previously, the court concludes that plaintiff Martin has abandoned his § 1983 false arrest and illegal imprisonment claim. For the reasons set out above, the court concludes that defendants' motion for summary judgment is due to be granted with regard to plaintiffs' Eighth Amendment claims against the individual defendants, plaintiff Smith's § 1983 excessive force claim and his state law assault and battery claim against defendants Anderson and Cobb, plaintiff Martin's assault and battery claim against defendant Cobb, and plaintiffs' § 1983 claim against the City of Opp. In all other respects, the motion is due to be denied. The court will rule on the motion for summary judgment by separate order.

---

**15.** With regard to the latter, it appears that Messick did not make this statement to Chief Metcalf until after Brooks had left the Department. *See* Plaintiff's Brief, p. 18 (Messick's conversation with Metcalf occurred after this lawsuit was filed); Complaint (filing date of September 4, 1997); Plaintiff's Brief, p. 20 (Metcalf's testimony that Brooks left agency in the latter part of 1996). However, the testimony regarding when Brooks left the Police Department was not filed with the court.

**16.** To provide a basis for municipal liability, the policy must have been the cause of the plaintiff's injury and, therefore, must have existed before the time of the injury. *See Gold, supra,* 151 F.3d at 1350 ("'It is only when the "execution of the government's policy or custom ... inflicts the injury" that the municipality may be held liable under § 1983.'") (citation omitted).